UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------×

RICARDO PAYAMPS and JOEL COLLADO,

        *Plaintiffs*,

        *v.*

M & M CONVENIENCE DELI & GROCERY CORP., *d/b/a*
M&M DELI AND GROCERY, A&MM MINI MART INC.,
*individually* JOHN DOE 1, *a/k/a* MOHAMED, *and
individually* JOHN DOE 2, *a/k/a* MO,

        *Defendants.*

------------------------------------------------------------------------×

**16 CV 4895**

**FIRST AMENDED
COMPLAINT**

Plaintiffs Ricardo Payamps and Joel Collado (collectively, "Plaintiffs"), by their counsel, The Harman Firm, LLP, allege for their First Amended Complaint against Defendants M & M Convenience Deli & Grocery Corp., d/b/a M&M Deli and Grocery ("M&M"), A&MM Mini Mart Inc. ("A&MM"), John Doe 1, a/k/a Mohamed ("Mohamed"), and John Doe 2, a/k/a Mo ("Mo") (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs seek damages and costs against Defendants for failing to pay them: the federal and state minimum wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 1–1200; the spread of hours, in violation of the NYLL; and the overtime premium rate for hours worked in excess of 40 in a work week, in violation of the FLSA and NYLL.

2.    Plaintiffs also seek damages and costs against Defendants for failing to provide them with required notices and keep accurate time records, in violation of the NYLL.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiffs' claims arising under the FLSA.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' NYLL claims, as they are so related to the FLSA claims that they form part of the same case or controversy.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## PARTIES

6. Plaintiff Ricardo Payamps, at all times relevant hereto, was a resident of New York County in the State of New York.

7. Plaintiff Joel Collado, at all times relevant hereto, was and is a resident of Hudson County in the State of New Jersey.

8. Upon information and belief, at all times relevant hereto, M&M, a bodega, was a corporation organized under the laws of the State of New York in Kings County with a location at 1066 Rutland Road, Brooklyn, New York 11212, called M&M Deli and Grocery.

9. Upon information and belief, M&M's gross volume of sales was in excess of $500,000.

10. Mo and Mohamed owned M&M for the majority of Plaintiffs' tenure at M&M.

11. Both Mohamed and Mo refused to give Plaintiffs their last names.

12. Upon information and belief, Mo, at all times relevant hereto, was and is a resident of the State of New York.

13. Upon information and belief, Mohamed, at all times relevant hereto, was and is a resident of the State of New York.

14. Upon information and belief, in and around November 2015, Mo sold his portion of the business to Mohamed.

15. Throughout Plaintiffs' employments at M&M, Mohamed and Mo appeared to Plaintiffs to have some sort of familial and business relationship.

16. Mohamed, who is substantially older than Mo, frequently instructed Mo as to how to run the store, took cash out of the register, and discussed the business with Mo, including how he compensated Plaintiffs.

17. Upon information and belief, when Mo wanted to sell the business entirely, Mohamed refused to approve the sale, which led Mo to sell his portion of the business to Mohamed instead.

18. On or about December 15, 2016, either Mohamed or Mo dissolved M&M.

19. On or about December 15, 2016, either Mohamed or Mo started a new corporation, A&MM, a bodega which operates out of the same location and performs the same services as M&M.

20. Upon information and belief, at all times relevant hereto, A&MM was and is a corporation organized under the laws of the State of New York in Kings County with a location at 1066 Rutland Road, Brooklyn, New York 11212.

21. Upon information and belief, A&MM's gross volume of sales was in excess of $500,000.

22. Upon information and belief, A&MM has continued M&M's business: A&MM is located at the same address and sells the same goods.

## STATEMENT OF FACTS

**I.    Mr. Payamps' Claims**

23.     Mr. Payamps was employed by M&M as a clerk from approximately November 2014 to December 2015.

24.     Mr. Payamps was non-exempt from FLSA and NYLL overtime pay requirements throughout his employment at M&M.

25.     Mr. Payamps' job duties were limited to opening and closing the Store, receiving deliveries, checking out customers, operating the cash register, and stocking inventory.

26.     Mr. Payamps did not make hiring or firing decisions, develop Store policy, discipline M&M's employees, or complete forms on M&M's behalf.

27.     Mr. Payamps was supervised by his boss, known to him only as "Mo," who managed M&M's day-to-day operations.

28.     Mo assigned work to Mr. Payamps.

29.     Mo handled any complaints, whether from customers, vendors, or others.

30.     Mo decided what items the Store would purchase and negotiated prices.

31.     In sum, Mo was in charge of managing the Store and assigned daily duties to Mr. Payamps.

32.     As such, Mr. Payamps did not fall under any exemption for overtime pay under the FLSA or NYLL throughout his employment at M&M.

33.     For two weeks after he began working at M&M, Mr. Payamps worked 12 hours per day, seven days per week, totaling an 84-hour work week.

34.     In Mr. Payamps' first two weeks of work, he worked 168 hours.

35. From around November 2014 to June 2015, Mr. Payamps worked 15 hours per day (7:00 a.m. to 10:00 p.m.), seven days per week, totaling a 105-hour workweek.

36. For those approximately 30 weeks, Mr. Payamps worked approximately 3,150 hours.

37. From June 2015 to December 2015, Mr. Payamps worked 12 hours per day (7:00 a.m. to 7:00 p.m.), seven days per week, totaling an 84-hour work week.

38. For approximately 26 weeks, Mr. Payamps worked approximately 2,184 hours.

39. Throughout his employment, Mr. Payamps was paid $7.00 per hour, in cash, received once a week on Sunday.

40. From 2009 to the present, the federal minimum wage has been $7.25 per hour.

41. From December 31, 2013, to December 31, 2014, the minimum wage in New York State was $8.00 per hour.

42. From January 1, 2015, to December 31, 2015, the minimum wage in New York State was $8.75 per hour.

43. M&M failed to pay Mr. Payamps the minimum wage throughout his employment at M&M.

44. As such, M&M has violated the minimum wage provisions of the FLSA and NYLL.

45. When Mr. Payamps complained to M&M that he was not being paid the minimum wage, M&M responded that, if Mr. Payamps did not want to work, he could quit.

46. M&M also failed to provide Mr. Payamps with "spread of hours" pay throughout his employment.

47. Mr. Payamps worked at least 10 hours each day that he was employed at M&M, yet M&M failed to pay him one additional hour of pay for each day of his employment.

48. Finally, as Mr. Payamps was a non-exempt employee, he was entitled to overtime premium pay for all hours worked in excess of 40 in a work week.

49. For each week of his employment at M&M, Mr. Payamps worked in excess of 40 hours.

50. However, M&M never paid Mr. Payamps at the overtime premium rate for hours worked in excess of 40 in a work week.

51. In weeks during which Mr. Payamps worked 15-hour days, he is owed 65 hours of pay at the overtime premium rate.

52. In weeks during which Mr. Payamps worked 12-hour days, he is owed 44 hours of pay at the overtime premium rate.

53. Mr. Payamps did not have a vacation day or sick day during his entire employment with M&M.

54. At the beginning of November 2015, Mr. Payamps complained to Mo about not being paid the minimum wage.

55. Mr. Payamps told Mo that it was not possible for him to continue to work 105 hours per week and receive only $735.00 in weekly compensation.

56. Mo told Mr. Payamps that if Mr. Payamps did not want to work for $7.00 per hour, he should quit.

57. Mr. Payamps told Mo that he was not going to quit because he had no other work, and he needed to work to live.

58. Mo told Mr. Payamps that he was going to sell M&M because it "caused [him] a lot of problems."

59. Mr. Payamps told Mo that Mr. Payamps' cousin might be interested in buying M&M.

60. Mo spoke with Mohamed, informing Mohamed that Mr. Payamps' cousin might be interested in buying M&M.

61. Upon information and belief, Mohamed told Mo not to sell M&M.

62. Upon information and belief, Mo told Mohamed that if he did not want him to sell M&M, then he should buy Mo's share.

63. Upon information and belief, Mohamed bought M&M from Mo in November 2015.

64. Upon information and belief, Mo shared with Mohamed Mr. Payamps' complaint about not being paid the minimum wage.

65. After the sale of M&M, Mohamed directly managed Mr. Payamps' work, schedule and pay.

66. Mohamed continued to pay Mr. Payamps $7.00 per hour, but he cut Mr. Payamps' hours to only four hours per day, seven days per week, on or about December 15, 2015, saying this his own family members were going to be running the store.

67. Mr. Payamps complained to Mohamed that he could not survive on $196.00 per week.

68. Mohamed told him that, if he did not want to work, he could leave.

69. Mr. Payamps resigned from M&M, as he could not survive on what Mohamed was willing to pay.

## II. Mr. Collado's Claims

70. Mr. Collado worked for M&M as a clerk from approximately June 2015 to December 2015.

71. Mr. Collado's duties were limited to opening and closing the Store, receiving deliveries, checking out customers, operating the cash register, and stocking inventory.

72. Mr. Collado did not make hiring or firing decisions, develop Store policy, discipline M&M's employees, or complete forms on behalf of M&M.

73. Mo supervised Mr. Collado and managed all of Mr. Collado's work.

74. As such, Mr. Collado also did not fall under any exemption for overtime pay under the FLSA or NYLL.

75. From June 2015 to August 2015, Mr. Collado worked 15 hours per day, seven days per week, totaling a 105-hour workweek.

76. From September 2015 to December 2015, Mr. Collado worked 12 hours per day (6:00 a.m. to 6:00 p.m.), seven days per week, totaling an 84-hour workweek.

77. At all times, Mr. Collado was paid $7.00 per hour, in cash, received once a week on Sunday.

78. M&M failed to pay Mr. Collado the minimum wage throughout his employment.

79. As such, M&M has violated the minimum wage provisions of the FLSA and NYLL.

80. M&M also failed to provide Mr. Collado with spread of hours pay.

81. Mr. Collado worked at least 10 hours each day that he was employed at M&M, yet M&M failed to pay him an additional hour of pay.

82. As such, M&M has violated the spread of hours provision of the NYLL.

83. Finally, Mr. Collado was a non-exempt employee.

84. As a result, Mr. Collado was entitled to overtime premium pay for all hours worked in excess of 40 in a work week.

85. In each week that he was employed at M&M, Mr. Collado worked in excess of 40 hours.

86. However, M&M never paid Mr. Collado at the overtime premium rate for hours worked in excess of 40 in a work week.

87. As such, M&M has violated the overtime provisions of the FLSA and NYLL.

88. In weeks during which Mr. Collado worked 15-hour days, he is owed 65 hours of pay at the overtime premium rate.

89. In weeks during which Mr. Collado worked 12-hour days, he is owed 44 hours of pay at the overtime premium rate.

90. Mr. Collado did not have a vacation day or sick day during his entire employment at M&M.

91. On or about December 15, 2015, Mr. Collado resigned from his position with M&M.

92. In light of the foregoing, M&M owes Mr. Payamps and Mr. Collado significant monies, including, but not limited to, back pay at the minimum wage rate, spread of hours pay, back pay at the overtime premium rate, liquidated damages, attorneys' fees, costs and interest.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of the FLSA

93. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 92 with the same force as though separately alleged herein.

94. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA.

95. The FLSA mandates that employers pay each of their employees for each hour worked at an hourly rate not less than the federal minimum wage.

96. Defendants' wages to Plaintiffs resulted in an hourly rate below the federally mandated minimum wage.

97. Plaintiff Payamps complained of minimum wage violations to Defendants.

98. Defendants therefore were aware of their obligation to pay the minimum wage.

99. Defendants knowingly and willfully violated Plaintiffs' rights under the FLSA by failing to pay them the minimum wage for hours worked.

100. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their back pay at the overtime premium rate, liquidated damages, reasonable attorneys' fees, costs, and interest related to the action.

**SECOND CAUSE OF ACTION**
**Unpaid Overtime in Violation of the FLSA**

101. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 100 with the same force as though separately alleged herein.

102. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA.

103. The FLSA mandates that employers must compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 each week.

104. Defendants willfully violated the FLSA's overtime requirement by not paying Plaintiffs at the overtime premium rates for hours worked in excess of 40 in a work week.

105. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

### THIRD CAUSE OF ACTION
### Failure to Pay Minimum Wage in Violation of the NYLL

106. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 105 with the same force as though separately alleged herein.

107. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL.

108. The NYLL mandates that employers pay each of its employees for each hour worked a wage of not less than the New York minimum wage.

109. Defendants' wages to Plaintiffs resulted in an hourly rate below the mandated minimum wage.

110. Plaintiff Payamps complained of minimum wage violations to Defendants.

111. Defendants therefore was aware of their obligation to pay the minimum wage.

112. Defendants knowingly and willfully violated Plaintiffs' rights under the NYLL by failing to pay them the minimum wage for hours worked.

113. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

### FOURTH CAUSE OF ACTION
### Unpaid Spread of Hours Pay in Violation of the NYLL

114. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 113 with the same force as though separately alleged herein.

115. The NYLL requires an employer to pay an employee one additional hour at the minimum wage for any day during which the employee worked 10 or more hours.

116. Plaintiffs worked 10 or more hours on every day of their employments with Defendants, but Defendants never paid Plaintiffs one additional hour at the minimum wage.

117. As such, Defendants have violated the NYLL.

118. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, interest and reasonable attorneys' fees and costs related to the action.

**FIFTH CAUSE OF ACTION**
**Unpaid Overtime in Violation of the NYLL**

119. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 118 with the same force as though separately alleged herein.

120. At all relevant times, Plaintiffs were employed by Defendants within the meaning of the NYLL.

121. The NYLL mandates that employers must compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 each week.

122. Defendants willfully and intentionally violated the NYLL's overtime requirement by not paying Plaintiffs at the overtime premium rates for hours worked in excess of 40 in a work week.

123. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants their unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

## SIXTH CAUSE OF ACTION
### Failure to Provide Notice and Keep Records in Violation of the NYLL

124. Plaintiffs hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 123 with the same force as though separately alleged herein.

125. At all relevant times, Plaintiffs were employed by Defendants within the meaning of the NYLL.

126. NYLL § 195 mandates that employers keep certain records and provide certain notices to their employees.

127. Defendants never provided Plaintiffs with any onboarding documents, pay stubs, or termination documents, nor did they keep accurate records of Plaintiffs' hours worked.

128. Defendants violated the NYLL's notice and record-keeping requirements by not providing Plaintiffs with required notices and keeping accurate records of hours worked under NYLL § 195 (1–6).

129. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants monies for each workday that the violations occurred or continue to occur, reasonable attorneys' fees, and costs related to the action.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. For the first cause of action, actual damages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest;

B. For the second cause of action, actual damages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest;

C. For the third cause of action, actual damages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest;

D. For the fourth cause of action, actual damages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest;

E. For the fifth cause of action, actual damages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest;

F. For the sixth cause of action, actual damages, liquidated damages, attorneys' fees, costs, and pre- and post-judgment interest; and

G. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
July 28, 2017

By: /s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1379]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiffs*