UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RICARDO PAYAMPS,
JOEL COLLADO,

                                        Plaintiffs,

                                                              **REPORT AND**
                 -against-                                     **RECOMMENDATION**
                                                              16-CV-4895-LDH-SJB

M & M CONVENIENCE DELI & GROCERY CORP.,
         *doing business as* M&M DELI AND GROCERY,
A&MM MINI MART INC.,
JOHN DOE 1, *a/k/a* MOHAMED,
JOHN DOE 2, *a/k/a* MO,

                                        Defendants.
----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

On September 1, 2016, Plaintiffs Ricardo Payamps ("Payamps") and Joel Collado

("Collado") commenced this case against Defendant M&M Convenience Deli & Grocery

Corp., doing business as M&M Deli and Grocery ("M&M") alleging claims under the Fair

Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  On July 28,

2017, they filed an Amended Complaint, and three Defendants—A&MM Mini Mart Inc.

("A&MM"), John Doe 1 or "Mohamed," and John Doe 2 or "Mo"—were added.  After

service was made on M&M and A&MM and they each failed to answer or otherwise

respond, the Clerk of Court issued certificates of default.  On October 18, 2017, Plaintiffs

moved for a default judgment.[1]  On October 19, 2017, the Honorable LaShann DeArcy

---

[1] No summons was returned as executed with respect to the John Doe
Defendants, and Plaintiffs do not seek a default judgment against them.  As a result, the
action against them should be dismissed.  *See, e.g.*, *Johnson & Johnson v. Azam Int'l
Trading*, No. 07-CV-4302, 2013 WL 4048295, at *17 (E.D.N.Y. Aug. 9, 2013) (adopting
report and recommendation that recommended, *inter alia*, dismissal of claims against
defendants who were not properly served and from whom default judgment was not
sought).

Hall referred the motion to the undersigned for a report and recommendation.  For the reasons stated below, it is respectfully recommended that the motion for default judgment be denied because Plaintiffs have failed to state a claim, as a matter of law, under FLSA.  Since there is no other federal claim in the case, the Court recommends that the District Court decline to exercise supplemental jurisdiction over the remaining NYLL claims, and dismiss the Amended Complaint without prejudice.

<u>Factual Background and Procedural History</u>

M&M is a bodega located at 1066 Rutland Road, Brooklyn, New York 11212. (Amended Complaint, Dkt. No. 20 ("Am. Compl.") ¶ 8).[2]  Payamps and Collado were both employed as clerks at M&M.  Their job duties included opening and closing the store, receiving deliveries, checking out customers, operating the cash register, and stocking inventory.  (Am. Compl. ¶¶ 23, 25, 70-71).  M&M was owned by two individuals, Defendants John Doe 1 and John Doe 2, known to Plaintiffs only as "Mohamed" and "Mo."  (Am. Compl. ¶ 10).  Both refused to give Plaintiffs their last names.  (*Id.* ¶ 11).

In November 2015, Mo wanted to sell the entire business; Mohamed refused to approve the sale.  As a result, Mo sold his portion of M&M to Mohamed.  (*Id.* ¶¶ 14, 17). On December 15, 2016, either Mohamed or Mo dissolved M&M and started a new entity, Defendant A&MM.  (Am. Compl. ¶ 18; *see also* Declaration of Walker G. Harman, Jr. dated October 18, 2017, Dkt. No. 30 ("Harman Decl.") ¶¶ 3-4, Exs. A-B).  A&MM operates out of the same location as M&M, performs the same services and sells the

---

[2] Unless otherwise noted, the facts are drawn from the Amended Complaint.

same goods as M&M, and has, for all intents and purposes, continued M&M's business. (Am. Compl. ¶¶ 19, 22).

Payamps alleges that he worked at M&M from November 2014 until December 2015. (Am. Compl. ¶ 23; Declaration of Ricardo Payamps dated April 1, 2018, Dkt. No. 32, Ex. A ("Payamps Decl.") ¶ 4). For two weeks after he began working at M&M, from November 1, 2014 to November 14, 2014, Payamps worked 12 hours per day (7:00 a.m. to 7:00 p.m.), seven days per week, or 84 hours per week. (Am. Compl. ¶ 33; Payamps Decl. ¶ 8). From November 15, 2014 to May 31, 2015, Payamps worked 15 hours per day (7:00 a.m. to 10:00 p.m.), seven days per week, or 105 hours per week. (Am. Compl. ¶ 35; Payamps Decl. ¶ 9). From June 1, 2015 to December 15, 2015, Payamps worked 12 hours per day (7:00 a.m. to 7:00 p.m.), seven days per week, or 84 hours per week. (Am. Compl. ¶ 37; Payamps Decl. ¶ 10). Throughout his employment, Payamps was paid $7.00 per hour, which he received in cash once a week on Sundays. (Am. Compl. ¶ 39; Payamps Decl. ¶ 7).

From the start of his employment until November 2015, Payamps was supervised by Mo, who assigned him work and managed M&M's daily operations. (Am. Compl. ¶¶ 27-28; Payamps Decl. ¶ 5). In November 2015, Mo sold his portion of M&M to Mohamed. (Am. Compl. ¶ 63; Payamps Decl. ¶ 18). Mohamed assumed control and began directly managing Payamps's work, schedule, and pay. (Am. Compl. ¶¶ 63, 65; Payamps Decl. ¶ 19). Mohamed continued to pay Payamps $7.00 per hour. (Am. Compl. ¶ 66; Payamps Decl. ¶ 20). On December 15, 2015, after M&M was dissolved and A&MM was formed, Mohamed reduced Payamps's schedule to only four hours per day, seven days per week (28 hours per week), telling him that Mohamed's family members were going to be running the store. (Am. Compl. ¶ 66; Payamps Decl. ¶ 21).

Payamps complained that he could not survive on $196 per week; Mohamed responded that if Payamps did not "want to work," he could leave.  (Am. Compl. ¶¶ 67-68; Payamps Decl. ¶ 22).  Payamps then resigned.  (Am. Compl. ¶ 69; Payamps Decl. ¶ 23).  It is unclear from the Amended Complaint if Payamps ever worked directly at A&MM (*i.e.* after December 15, 20115, when M&M was dissolved).  However, the motion for default judgment only seeks damages for Payamps through December 15, 2015. (Plaintiffs' Memorandum of Law in Support of Their Motion for Default Judgment dated October 18, 2017, Dkt. No. 29 ("Pls.' Mot.") at 2-3).

Collado worked at M&M from June 2015 until December 2015.  (Am. Compl. ¶ 70; Declaration of Joel Collado dated April 1, 2018, Dkt. No. 32, Ex. C ("Collado Decl.") ¶ 4).  From June 1, 2015 to July 31, 2015, Collado worked 15 hours per day, seven days per week, or 105 hours per week.  (Am. Compl. ¶ 75; Collado Decl. ¶ 8).  From August 1, 2015 to December 2015, Collado worked 12 hours per day (6:00 a.m. to 6:00 p.m.), seven days per week, or 84 hours per week.  (Am. Compl. ¶ 76; Collado Decl. ¶ 9).  Collado was also paid $7.00 per hour, which he received in cash once a week on Sundays.  (Am. Compl. ¶ 77; Collado Decl. ¶ 6).

On December 15, 2015, Collado resigned from his position.  (Am. Compl. ¶ 91; Collado Decl. ¶ 15).  Throughout his employment, Collado was supervised by his boss Mohamad or Mo,[3] who assigned work to Collado and directed M&M's daily operations. (Collado Decl. ¶ 7).

---

[3] It is unclear from Collado's declaration if "Mohamad" is Defendant Mo's full name or if this is a typographical error and the declaration intended to refer to Defendant Mohamed.

Plaintiffs commenced this action against M&M on September 1, 2016.  (Dkt. No. 1).  M&M was served with the summons and the original Complaint on October 3, 2016.  (Dkt. No. 8).  On November 4, 2016, the Clerk of Court issued a certificate of default against M&M.  (Dkt. No. 9).  On November 7, 2016, the Court ordered Plaintiffs to move for default judgment against M&M by December 7, 2016.  (Order dated November 7, 2016).  Plaintiffs moved for default judgment on December 7, 2016.  (Dkt. Nos. 10-13).  That motion was referred by District Judge DeArcy Hall to Magistrate Judge Vera M. Scanlon for a report and recommendation.  (Order dated December 13, 2016).

The Court held a hearing on June 6, 2017.  Payamps appeared in person to discuss his retaliation claims.  (Order dated April 5, 2017; Minute Entry dated June 6, 2017).  Plaintiffs withdrew their pending motion for default judgment at the hearing.  (Minute Entry dated June 6, 2017).  The Court directed them to file an amended motion for default judgment.  (*Id.*).  Plaintiffs instead sought leave to amend the Complaint to add three additional defendants—A&MM, Mo, and Mohamed—and withdraw Payamps's retaliation claims.  (Dkt. Nos. 18-19).  The Court granted Plaintiffs' motion.  (Order dated July 25, 2017).  Plaintiffs filed the Amended Complaint on July 28, 2017.  (Dkt. No. 20).

The Amended Complaint contains six causes of action alleging: violation of 1) the minimum wage provisions of FLSA (29 U.S.C. § 206(a)); 2) the overtime provisions of FLSA for work in excess of 40 hours per week (29 U.S.C. § 207(a)(1)); 3) the New York Minimum Wage rate (NYLL § 652(1)); 4) the overtime provisions of NYLL (NYLL § 190 *et seq.*); 5) the Spread of Hours Wage Order for any day Plaintiffs had to work over 10 hours a day (NYLL §§ 190 *et seq.* and 650 *et seq.* and N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") Tit. 12, § 142-1.6); and 6) the notice and recordkeeping requirements of

NYLL (NYLL § 195(1)).  (Am. Compl. ¶¶ 93-129).  Plaintiffs seek $119,353.14 in total damages.  (Pls.' Mot. at 18; Harman Decl. ¶ 10).

On October 5, 2017, the Clerk of Court issued certificates of default against M&M and A&MM.  (Dkt. No. 27).  Plaintiffs filed their motion for default judgment on October 18, 2017.  (Dkt. No. 28).  The Court ordered Plaintiffs to provide proof that the motion was properly served on Defendants pursuant to Local Rule 55.2(c), (Order dated March 22, 2018), and evidence supporting damages, (Order dated March 26, 2018).  Plaintiffs provided proof that the motion was properly served on April 10, 2018, (Dkt. No. 33), and provided declarations in support of damages on April 5, 2018, (Dkt. No. 32).

Discussion

## I.   Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).  The Clerk entered a default against M&M and A&MM on October 5, 2017.  (Dkt. No. 27).

A threshold question before reaching liability or damages is whether M&M and A&MM's conduct is sufficient to warrant default judgment being entered.  In determining whether to enter a default judgment, the Court is guided by the same

factors that apply to a motion to set aside entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

As to the first factor, the failure by M&M and A&MM to respond to the Complaint demonstrates the default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at * 1 (S.D.N.Y. Dec. 20, 2007).  They had sufficient notice of the present litigation.  Both were properly served with a summons and the Amended Complaint.  A copy of a summons and the Amended Complaint was left with an authorized agent in the Office of the Secretary of State of the State of New York for A&MM and M&M on August 10, 2017 and August 28, 2017 respectively.[4]  (Harman Decl. ¶ 6; Dkt. No. 30, Exs. C-D).  A copy of a summons and the Amended Complaint were also mailed to M&M and A&MM via FedEx, and was signed for by an individual at the store on August 2, 2017.  (Dkt. No. 23).  The motion for default judgment was served on them by serving the Office of the Secretary of State on April 10, 2018.  (Dkt. No. 33).  Notwithstanding this notice and service, M&M and

---

[4] In New York, dissolution does not affect a corporation's amenability to service of process.  N.Y. Bus. Corp. Law § 1006(4) (stating that a dissolved corporation "may sue or be sued in all courts . . . in its corporate name, and process may be served by or upon it.").  Valid service may be effectuated on a dissolved corporation by serving the New York Secretary of State.  *Ortiz v. Green Bull, Inc.*, No. 10-CV-3747, 2011 WL 5553834, at *3 (E.D.N.Y. Nov. 14, 2011).  As such, even if M&M was dissolved as alleged, (Am. Compl. ¶ 18), it would not affect the propriety of Plaintiffs' service.

A&MM did not respond to the Amended Complaint, did not appear, and have not in any way attempted to defend themselves.

As to the second factor, the Court concludes there is a meritorious defense to Plaintiffs' allegations because as explained below, Plaintiffs have failed to plead a claim for relief under FLSA.  As such, it would be improper to enter default.  *Winn v. Ballet Makers, Inc.*, No. 87-CIV-7286, 1996 WL 325610, at *1 (S.D.N.Y. June 12, 1996) (concluding because Plaintiff's complaint was subject to dismissal under Rule 12(b)(6) and since "there are serious questions regarding . . . liability in this action, it would be inappropriate to enter a default judgment."); *see also Davis v. Musler*, 713 F.2d 907, 910 (2d Cir. 1983) (reversing order that denied motion to vacate default judgment because failure to state a claim was potentially a meritorious defense).

As to the third factor, the non-defaulting parties, Plaintiffs Payamps and Collado, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court."  *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, No. 06-CV-14226, Dkt. No. 18 (Jan. 26, 2009).

As a result, because all three factors have not been satisfied and those reasons explained below, the Court recommends denial of the motion for default judgment.

II.   Liability

When a defendant defaults, a court, on consideration of a plaintiff's default judgment motion "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor."  *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009).  In addition, a party's default is deemed as an admission of all of well-

pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citations and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").

A. FLSA Minimum Wage and Overtime Claims against M&M

Plaintiffs have alleged claims for violations of both FLSA's minimum wage and overtime requirements by M&M.

To establish a claim under FLSA, "plaintiff must prove the following: (1) the defendant is an employer subject to . . . FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . FLSA; and (3) the employment relationship is not exempted from . . . FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 780799 (Feb. 28, 2017).

Plaintiffs have failed to establish the first of these requirements. That is, they have not alleged facts to establish that M&M is subject to FLSA. FLSA's minimum wage

and overtime requirements apply where employees are "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). 29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); *see generally Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985).

The Court, as explained below, concludes that FLSA does not cover M&M. All of the facts alleged in the Amended Complaint have been taken as true, and M&M has defaulted. The Amended Complaint, however, is devoid of any facts (even conclusory ones) from which the Court can infer that FLSA applies to M&M. Specifically, there is no allegation that M&M is subject to FLSA due to enterprise coverage; nor is there any allegation that FLSA applies due to individual coverage. All Plaintiffs have alleged about M&M is that Plaintiffs worked there, that it was a bodega which was located in Brooklyn (Am. Compl. ¶ 8), and that M&M had gross revenues greater than $500,000. (*Id.* at ¶ 9.). Nothing is said about the nature of what it sells or to whom. There is not even a bare allegation about M&M that tracks the statutory language of FLSA. This is the rare case, therefore, where having nothing from which to draw an inference that FLSA applies, the Court must recommend that default judgment be denied.

1. Individual Coverage

As to individual coverage, neither Plaintiff has alleged that he *personally* was either engaged in commerce or in the production of goods for commerce. *Owusu v. Corona Tire Shop, Inc.,* No. 09-CV-3744, 2013 WL 1680861, at *3 (E.D.N.Y. Apr. 17, 2013) ("[T]he employee bears the burden of establishing his individual coverage [under the FLSA].").

a.   <u>"Engaged in Commerce"</u>

"To determine whether an individual employee is engaged in commerce, courts conduct a fact-specific inquiry into the employment actions of each and every employee asserting a claim under the Act." *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 257 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009).  "Employees are 'engaged in commerce' within the meaning of [FLSA] when they are performing work involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof."  29 C.F.R. § 779.103.  "[T]his includes every employee employed in the channels of such commerce or in activities so closely related to this commerce, as to be considered a part of it as a practical matter."  *Id.*

For each Plaintiff, the Amended Complaint contains the same bare bones allegation about his duties.  It states that Plaintiffs each "open[ed] and clos[ed] the [s]tore, receiv[ed] deliveries, check[ed] out customers, operat[ed] the cash register, and stock[ed] inventory."  (Am. Compl. ¶ 25 ("Payamps"); ¶ 71 ("Collado")).  These activities, described without any factual detail, are insufficient to establish that either Plaintiff was "engaged in commerce."

The allegation that each Plaintiff received deliveries is presumably intended to suggest that he handled goods traveling interstate; that would suggest each Plaintiff is an employee "engaged in commerce."  Perhaps, if the Amended Complaint said as much or said something about the bodega.  *See, e.g.*, *Kinzer v. Stelling*, No. 6:11-CV-465-ORL-28, 2012 WL 1405694, at *3 (M.D. Fla. Mar. 28, 2012) (allegation that "Plaintiffs alleged that New Haven Exxon operated a retail gas station/automotive repair

shop/convenience store and repaired automobiles and sold gasoline and other consumable items that had traveled in interstate commerce" sufficient to establish individual coverage), *report and recommendation adopted sub nom. Kinzer v. Nexus Enters., Inc.*, 2012 WL 1405674 (Apr. 23, 2012). This is not a difficult undertaking—and the barest one—but it is absent. The Amended Complaint could also have said something—the faintest pleading would have likely sufficed—about the deliveries. Were these deliveries of goods and supplies from New York state producers, manufacturers, or suppliers? Or were they from out-of-state companies? *See, e.g.*, *Wilkinson v. Moose Int'l, Inc.*, No. 8:16-CV-159, 2016 WL 3064098, at *4 (M.D. Fla. May 27, 2016) (finding that individual coverage was established as deliveries were accepted from out-of-state sources, and distinguishing from cases where the employee only received deliveries from in-state distributors). But it is entirely silent, and so no inference can be drawn.

As to servicing customers, nothing is said about the customers. As a basic rule, "if [the plaintiff] did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA." *Li v. Cheng*, No. 10-CV-4664, 2012 WL 1004852, at *4 (E.D.N.Y. Mar. 23, 2012). The Amended Complaint's barebones allegations about contacts with customers cannot establish individual coverage. *E.g.*, *Jones v. SCO Family of Servs.*, 202 F. Supp. 3d 345, 351 (S.D.N.Y. 2016) ("Her allegations of regular use of items ordered from outside of New York or regular contact with persons and organizations also from out of state are vague, provide no information about the frequency of those contacts, and therefore cannot not support an assertion that a substantial part of Plaintiff's work closely relates to interstate commerce.") (quotations omitted). With respect to operating a cash register, even if the register was connected to an interstate network (which is not alleged), the use of the register was, at

best, a means to interact with the bodega's customers, and as noted, the customer-nexus of Plaintiffs' activities are too vague or unspecified to establish they were "engaged in commerce."

As to any equipment used or goods stocked, nothing is said about whether such equipment or inventory originated out of state. Without more, the Court cannot conclude the Amended Complaint's bare allegation about goods can create an inference engagement in commerce. *See, e.g.*, *Jones*, 202 F. Supp. 3d at 345; *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) ("While Ethelberth might be able to establish individual coverage by showing that these supplies and equipment were shipped to or from overseas or out-of-state destinations during his work shifts, Ethelberth has offered no such evidence.").

The allegations in the Complaint do not suggest, therefore, that Plaintiffs were "engaged in commerce, but merely describes [their] work." *Alonso v. Tepa Mar Y Tierra Inc.*, No. 3:11-CV-1783, 2013 WL 12124018, at *2 (N.D. Tex. Feb. 5, 2013) (concluding that complaint failed to allege existence of FLSA coverage).

### b.  "Production of Goods" In Commerce

Plaintiffs have not alleged—even in a conclusory fashion—that they produced goods in commerce. "'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State . . . [A]n employee shall be deemed to have engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." 29 U.S.C. § 203(j). "[E]mployees in retail stores who sell, pack, or otherwise

work on goods which are to be shipped or delivered outside of the State are engaged in the production of goods for commerce."  29 C.F.R. § 779.104.

Despite FLSA's broad definition of production of goods, the Amended Complaint does not allege that Plaintiffs were involved in the production of goods at all.  Plaintiffs only stocked inventory (*i.e.* handled goods that have arrived at the store), not goods that were to be shipped or delivered outside of New York.  One could imagine a convenience store that functioned in such a way, but the Court cannot conclude based on the Amended Complaint that M&M had such operations.  As a result, the Court cannot conclude these plaintiffs were involved in the production of goods.  *Day An Zhang v. L.G. Apparel, Inc.*, No. 09-CV-3240, 2011 WL 900183, at *3 (E.D.N.Y. Feb. 18, 2011) ("[P]laintiff alleges she was a factory worker for Defendant's apparel manufacturing business and that Plaintiff is a covered individual within the meaning of the FLSA. These conclusory allegations, without any factual details addressing defendants' interstate activities, fail to establish that plaintiff was personally engaged in the production of goods for commerce.") (citations and quotations omitted), *report and recommendation adopted*, 2011 WL 900950 (Mar. 15, 2011); *Ecoquij-Tzep v. Grill*, No. 3:16-CV-625, 2016 WL 3745685, at *3 (N.D. Tex. July 12, 2016) ("Plaintiff offers neither a description of the nature of his work nor a clarification as to how such work engaged him in interstate commerce, and the mere fact that he was . . . [a] cashier is not enough. In fact, courts regularly find that employees in equivalent positions are not individually engaged in interstate commerce."); *Mejia v. Bros. Petroleum, LLC*, No. 12-CV-2842, 2015 WL 3619894, at *5 (E.D. La. June 9, 2015) ("[T]he Second Amended Complaint is devoid of any facts or allegations regarding the plaintiffs' relationship to instrumentalities or facilities of interstate commerce.  Indeed, the only allegations in the

Second Amended Complaint regarding plaintiffs' work duties are that plaintiffs worked as hourly cashiers, cooks, and store operators at defendants' convenience stores. While these allegations provide a generic description of plaintiffs' work, they do not show how the work engages plaintiffs in interstate commerce.") (citations and quotations omitted).

*      *      *

Furthermore, individual coverage is only triggered where "a substantial part of the employee's work . . . [is] related to interstate commerce." *Boekemeier v. Fourth Universalist Soc. in City of New York*, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000) (quotations omitted). For instance, even if the Amended Complaint alleged that Plaintiffs received goods or deliveries from out-of-state, individual coverage is still not established because the Amended Complaint is devoid of details like how often the shipments were. Sporadic and occasional shipment of insubstantial amounts of goods indicates that a plaintiff's work is only "indirectly relate[d] to interstate commerce," and thus insufficient to support individual coverage under the FLSA. *Boekemeier*, 86 F. Supp. 2d at 287.

As a result, individual coverage does not trigger any FLSA minimum wage or overtime obligation for M&M.

    2. <u>Enterprise Coverage</u>

M&M is also not subject to FLSA based on enterprise coverage. Enterprise coverage exists where an employer has (1) employees engaged in commerce or in the production of goods for commerce; and (2) an annual gross volume of sales greater than $500,000. 29 U.S.C. § 203(s)(1)(A); *see also Saucedo*, 2016 WL 8376837, at *4.

Plaintiffs do allege that M&M had annual gross sales volumes of more than $500,000. (Am. Compl. ¶¶ 9, 21).

With respect to the first requirement, the Amended Complaint (and the original Complaint, which is nearly identical) is devoid of any allegation that M&M has employees engaged in commerce or in the production of goods for commerce.  The Amended Complaint alleges, for example, that M&M is a bodega., (Am. Compl. ¶¶ 8, 19), M&M sold goods, (*id.* ¶ 22), and M&M purchased items, (*id.* ¶ 30).  But nothing indicates that any activity was interstate in nature.

Had the Amended Complaint contained the bare and conclusory assertion that M&M is a business engaged in interstate commerce, that might be sufficient to establish enterprise coverage.  Some courts in this District have found that to be enough for a plaintiff's FLSA case to move forward or for a default judgment to be entered.  *See, e.g.*, *Avelar v. Ed Quiros, Inc.*, No. 13-CV-7017, 2015 WL 1247102, at *5 (E.D.N.Y. Mar. 18, 2015) (finding that factual assertions in the complaint that "defendants' business was directly engaged in interstate commerce and had annual gross revenue of at least $500,000" which were not refuted by defaulting defendants were sufficient to satisfy the jurisdiction prerequisite) (adopting report and recommendation) (citing *Hernandez v. Punto Y Coma Corp.*, No. 10-CV-3149, 2013 WL 4875074, at *2 n.4 (E.D.N.Y. Sept. 11, 2013)).  To be sure, there are Courts who have required more.  *E.g.*, *Jones v. E. Brooklyn Servs. Corp.*, No. 11-CV-1021, 2012 WL 909830, at *1-2 (E.D.N.Y. Feb. 28, 2012) (recommending the denial of a default judgment motion where the complaint contained "only conclusory statements about interstate commerce"), *report and recommendation adopted*, 2012 WL 909825 (Mar. 16, 2012).  But there is not even the bare, conclusory allegation in the Amended Complaint that M&M is engaged in interstate commerce.

The only possible means to infer that the Amended Complaint alleges enterprise coverage would be to infer that a bodega necessarily engages in interstate commerce. Several courts in this District have concluded—from the nature of a business alone—that the interstate commerce requirement is met and that enterprise coverage exists. *E.g.*, *Shim*, 2009 WL 211367, at *3 (finding identification of defendant as medical facility is sufficient to infer enterprise coverage as "it is simply inconceivable that none of the medical, custodial or office supplies used at the Center originated outside of New York"); *Huerta v. Victoria Bakery*, No. 10-CV-4754, 2012 WL 1107655, at *1-3 (E.D.N.Y. Mar. 30, 2012) (finding it "inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York"); *Gomez v. El Rancho de Andres Carne de Tres Inc.*, No. 12-CV-1264, 2014 WL 1310296, at *3 (E.D.N.Y. Mar. 11, 2014) (inferring that defendants engaged in interstate commerce where the plaintiff alleged "that the defendants operated a restaurant, Andres Carne, which served Columbian [sic] cuisine"), *report and recommendation adopted*, 2014 WL 1310299 (Mar. 31, 2014).

This approach has been utilized with respect to restaurants, *e.g.*, *id.*,[5] nail salons, *e.g.*, *Shu Lan Chen v. Gypsophila Nail & Spa Inc.*, No. 15-CV-2520, 2015 WL 3473510, at *4 (S.D.N.Y. June 2, 2015), and even a supermarket, *e.g.*, *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015),

---

[5] *See also Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("[T]he myriad goods necessary to operate a Peruvian restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State. . . .  As a restaurant, it is reasonable to infer that Las Delicias requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more.  It is also reasonable to infer that some of these materials moved or were produced in interstate commerce.").

(finding that "[i]t is logical to infer that a supermarket's products and produce would have originated outside of New York[,]" coupled with general allegations that defendant was "engage[d] in interstate commerce, produce[d] goods for interstate commerce, and/or handle[d], [sold], or otherwise work[ed] on goods or materials that have been moved in or produced for such commerce by any person"), *report and recommendation adopted*, 2015 WL 5561180 (Sept. 21, 2015).

There is a common-sense appeal to that approach.  After all, bodegas have a long history in New York City.  *See generally* Hansi Lo Wang, *New York City Bodegas and The Generations Who Love Them*, NPR (Mar. 10, 2017), goo.gl/ua8JyN.  "It's hard to define what exactly a bodega is, but, as the saying goes, you know it when you see it."  Matt Blitz, *The History (and Future) of the Bodega*, Food & Wine (Jun. 22, 2017), goo.gl/5yMSn3.  But what may be a fine approach when educating a non-New Yorker on the City's institutions is not a basis for imposing liability under FLSA.

To begin with, Plaintiffs have not even bothered to allege—even in a conclusory fashion—that M&M was involved in interstate commerce or that it was subject to enterprise coverage.  It is a near universal consensus that a plaintiff has to say *something* about whether the employer is engaged in interstate commerce or what subjects the employer to FLSA.  This is why motions to dismiss are granted or default judgments are denied where nothing is said.  *E.g.*, *Coulibaly v. Millennium Super Car Wash, Inc.*, No. 12-CV-4760, 2013 WL 6021668, at *5 (E.D.N.Y. Nov. 13, 2013) (denying default judgment in part because "[w]ith respect to plaintiff's 2012 claims, however, plaintiff has failed to allege that defendant had an annual gross volume of sales equal to or greater than $500,000, as is required by the statute.") (adopting report and recommendation); *Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-6304, 2014 WL 1011070,

at *1 & *8 (E.D.N.Y. Mar. 14, 2014) (adopting recommendation that default judgment on FLSA claim be denied where complaint failed to allege $500,000 requirement met); *Ferrera v. Tire Shop Ctr.*, No. 14-CV-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015) (denying default judgment to Plaintiff for, *inter alia*, failure to allege defendant was engaged in commerce, where complaint said nothing more than defendant was a "commercial auto business."), *report and recommendation adopted*, 2015 WL 3604078 (June 5, 2015).

Even in *Cardoza*, *supra*, where the Court inferred that a supermarket must engage in interstate commerce, Plaintiffs alleged that the Defendants "engage in interstate commerce, produce goods for interstate commerce, and/or handle, sell, or otherwise work on goods or materials that have been moved in or produced for such commerce by any person."  *Cardoza*, 2015 WL 5561033, at *3.  No such paragraph is in the Amended Complaint.  Unlike the absence of an exemption to FLSA—which need not be pled in a complaint, *see Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015)—the interstate hook of FLSA must be in the Complaint in some manner. It is not here.

If a plaintiff could simply say a defendant is a bodega and were a Court to conclude that met the interstate commerce requirement, that would render *Twombly* and *Iqbal* seemingly irrelevant to FLSA.  But we know that in this Circuit those cases are not irrelevant.  A plaintiff may not simply allege that he was entitled to overtime, full stop.  *Nakahata v. New York-Presbyterian Healthcare Sys. Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).  Plaintiffs "must allege overtime without compensation in a 'given' workweek," *see Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013), and not "an all-purpose pleading template alleging overtime in 'some or all

workweeks.'" *Dejesus v. HF Management Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).

Nor is it acceptable for a plaintiff to just track "the statutory language of the FLSA . . .

but alleging no particular facts sufficient to raise a plausible inference of an FLSA

overtime violation." *Id.* at 89.  Rather, a plaintiff must "provide sufficient detail about

the length and frequency of their unpaid work to support a reasonable inference that

they worked forty hours in a given week." *Nakahata*, 723 F.3d at 201.  Only with such

factual context will a plaintiff's overtime claim move from merely "conceivable to

plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and thereby survive a

motion to dismiss.  *Dejesus*, 726 F.3d at 90.

Consistent with this approach taken on overtime, it is appropriate to require that

something be alleged about the interstate commerce of a defendant before imposing an

FLSA violation on it.[6]  *See also Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-

7310, 2016 WL 1359218, at *4 (E.D.N.Y. Mar. 17, 2016) ("[R]equiring non-conclusory

allegations is more consonant with applicable case law concerning pleading

requirements, and that it does not frustrate the FLSA's remedial purpose to require a

plaintiff seeking the statute's protection to explain in her pleading just what it is about

---

[6] Courts outside of the Second Circuit have concluded that even a conclusory allegation that enterprise coverage exists is insufficient.  *See, e.g., Ergashov v. Glob. Dynamic Transp., LLC,* 680 F. App'x 161, 163 (4th Cir. 2017) ("[T]he complaint does not adequately allege enterprise coverage, and delivering to stores that are part of a national franchise is not enough to show that the Appellants were engaged in interstate commerce, as opposed to merely affecting it."); *Fraction v. Prot. Consultants*, No. 6:09-CV-902, 2010 WL 916661, at *1 & *3 (M.D. Fla. Mar. 10, 2010) (denying plaintiff's motion for default judgment on plaintiff's FLSA claim in light of plaintiff's conclusory assertion that defendant was an "enterprise engaged in interstate commerce or in the production of goods for commerce"); *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-CV-2033, 2009 WL 4349806, at *3 (M.D. Fla. Nov. 24, 2009) (denying plaintiff's motion for default judgment where plaintiff's complaint merely parroted the elements of FLSA).

her employer's business that brings it within the law's ambit.*"), report and recommendation adopted sub nom. Perez v. Yang Cleaners,* 2016 WL 1337310 (Apr. 5, 2016).

Ultimately, "to properly allege individual or enterprise coverage, [a plaintiff] need not do much.  Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce." *Sciacca v. Vectorworks Marine, LLC*, No. 6:12-CV-1255, 2013 WL 656325, at *4 (M.D. Fla. Feb. 1, 2013), *report and recommendation adopted*, 2013 WL 655402 (Feb. 22, 2013).  Plaintiffs have not done that, even in a conclusory fashion.  As a result, the Court recommends that the default judgment on the FLSA claim be denied, and the FLSA causes of action be dismissed without prejudice.  *See, e.g.*, *Siemieniewicz v. CAZ Contracing Corp.*, No. 11-CV-704, 2012 WL 5183375, at *9 (E.D.N.Y. Sept. 21, 2012) (denying default judgment and recommending dismissal without prejudice of FLSA and state law claims), *report and recommendation adopted as modified*, No. 11-CV-704, 2012 WL 5183000 (E.D.N.Y. Oct. 18, 2012) (dismissing the complaint with leave to amend).

B.  Liability of A&MM

The Court must also determine if any liability should be imposed against A&MM. It is not alleged in the Amended Complaint that either Payamps or Collado ever worked at A&MM, (*see, e.g.*, Am. Compl. ¶¶ 37, 76 (discussing hours through December 2015)), and the motion does not seek damages past December 15, 2015, when M&M was dissolved and A&MM took over the business.  (Pls.' Mot. at 2-3).  Thus, Plaintiffs are not seeking to hold A&MM directly liable for any wage and hour violations.

It appears that Plaintiffs have sued A&MM under a theory of successor liability—although the motion papers do not address the issue.  The Amended Complaint alleges that A&MM "operates out of the same location as M&M, performs the same services and sells the same goods as M&M, and has, for all intents and purposes, continued M&M's business."  (Am. Compl. ¶¶ 18-19, 22).

Successor liability cannot attach if there is no primary liability.  "Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities."  *New York v. Nat'l Serv. Indus., Inc.,* 460 F.3d 201, 209 (2d Cir. 2006) .  There are various exceptions to that rule.  *Id.*  Of course, a seller must have liability in the first place for the Court to analyze whether such exceptions would apply.  *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) ("[S]uccessor liability is not a separate cause of action but merely a theory for imposing liability on a defendant based on the predecessor's conduct.") (quotations omitted).  In this case, A&MM was alleged to have purchased the assets of M&M.  (Am. Compl. ¶ 22).  Since M&M has no FLSA liability, A&MM—through its purchase—could not have inherited any liability.  As a result, the Court also recommends that the default judgment motion with respect to the FLSA claim against A&MM be denied.

III.   <u>State Law Claims</u>

Failure to establish individual or enterprise coverage as required by FLSA is non-jurisdictional.  *Benitez v. F & V Car Wash, Inc.*, No. 11-CV-1857, 2012 WL 1414879, at *1 (E.D.N.Y. Apr. 24, 2012) ("[A]fter review of recent case law in this Circuit, the court . . . concludes that the question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order

to prove liability.") (collecting cases); *Zaldivar v. Anna Bella's Cafe, LLC*, 2012 WL 642828, at *3 (E.D.N.Y. Feb. 28, 2012) (denying Rule 12(b)(1) motion because Plaintiff's failure to make the enterprise coverage showing "does not deprive this Court of subject matter jurisdiction."); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 332 (S.D.N.Y. 2002) ("[T]he question of whether or not Defendants actually are 'an enterprise engaged in commerce' within the meaning of 29 U.S.C. § 203(s)(1) is an issue that goes to the merits of Plaintiffs' claims rather than the Court's subject matter jurisdiction.").

Because a plaintiff's obligation to demonstrate that an employer is an enterprise engaged in commerce is "simply an element of the cause of action" and a "failure to make this showing constitutes a failure on the merits," *Velez*, 203 F. Supp. 2d at 332, the Court may decide whether to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").  When all federal claims are eliminated before trial, the balance of factors to be considered—including judicial economy, convenience, fairness, and comity—typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

Courts have generally found that where an FLSA claim is dismissed, declining to exercise supplemental jurisdiction over remaining state-law claims is appropriate.  *See, e.g.*, *Baguidy v. Boro Transit Inc.*, 283 F. Supp. 3d 14, 33 (E.D.N.Y. 2017) (FLSA retaliation claim dismissed; supplemental jurisdiction decliend over state law retaliation claims); *Chen v. Major League Baseball*, 6 F. Supp. 3d 449, 460-61 (S.D.N.Y. 2014), *aff'd sub nom. Chen*, 798 F.3d at 72.  It is, therefore, respectfully recommended that the

remaining state law claims be dismissed without prejudice as well. *See, e.g.*, *Day An Zhang*, 2011 WL 900183, at *1 n.1, *report and recommendation adopted*, 2011 WL 900950 (denying default judgment on FLSA claims and dismissing remaining state law claims without prejudice without leave to amend); *see also Brown v. Brooklyn Indus. LLC*, No. 13-CV-3695, 2015 WL 1726489, at *3 (S.D.N.Y. Apr. 15, 2015) ("As the Court declines to exercise supplemental jurisdiction, a dismissal without prejudice is appropriate.").

## Conclusion

For the reasons stated above, it is respectfully recommended that default judgment be denied on the First and Second Causes of Action, which are the FLSA claims, and the Court decline to exercise supplemental jurisdiction over remaining state law claims and the action be dismissed without prejudice.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Plaintiffs shall serve a copy of this Report and Recommendation on the

Defendants and file proof of such service in the record.

/s/ *Sanket J. Bulsara May 18, 2018*
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York