UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RICARDO PAYAMPS,
JOEL COLLADO,

                                    Plaintiffs,

                                                                **REPORT AND**
              -against-                                         **RECOMMENDATION**
                                                                16-CV-4895-LDH-SJB

M & M CONVENIENCE DELI & GROCERY CORP.,
        *doing business as* M&M DELI AND GROCERY,
A&MM MINI MART INC.,
JOHN DOE 1, *a/k/a* MOHAMED,
JOHN DOE 2, *a/k/a* MO,

                                    Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

            On September 1, 2016, Plaintiffs Ricardo Payamps ("Payamps") and Joel Collado

("Collado") commenced this case against Defendant M&M Convenience Deli & Grocery

Corp. ("M&M"), alleging claims under the Fair Labor Standards Act ("FLSA") and New

York Labor Law ("NYLL").  After Defendants failed to appear, Plaintiffs moved for a

default judgment on December 7, 2016; at the hearing on the motion, Plaintiffs

withdrew their request for a default judgment.  On July 28, 2017, Plaintiffs filed an

Amended Complaint, and three additional Defendants—A&MM Mini Mart Inc.

("A&MM"), John Doe 1 or "Mohamed," and John Doe 2 or "Mo"[1]—were added.  After

service was made on M&M and A&MM and each failed to answer or otherwise respond,

_____

            [1] No summons was returned as executed with respect to the John Doe
Defendants, and Plaintiffs do not seek a default judgment against them.  As a result, the
action against them should be dismissed.  *See, e.g.*, *Johnson & Johnson v. Azam Int'l
Trading*, No. 07-CV-4302, 2013 WL 4048295, at *1, *17 (E.D.N.Y. Aug. 9, 2013)
(adopting report and recommendation that recommended, *inter alia*, dismissal of
claims against defendants who were not properly served and from whom default
judgment was not sought).

the Clerk of Court issued certificates of default. On October 18, 2017, Plaintiffs again moved for default judgment. On May 18, 2018, this Court recommended that default judgment be denied without prejudice for failure to state a claim under FLSA, and that the Court decline to exercise supplemental jurisdiction over the remaining state law claims. The District Court adopted the Report and Recommendation over Plaintiffs' objection. Plaintiffs subsequently filed a Second Amended Complaint on September 20, 2018. As before, service was made on M&M and A&MM, and they each failed to answer or otherwise respond. The Clerk of Court issued certificates of default, and Plaintiffs moved again for default judgment. Plaintiffs' motion, however, failed to comply with Local Civil Rule 55.2 and Plaintiffs therefore withdrew their motion. Plaintiffs have now made their fourth motion for default judgment. For the reasons stated below, it is respectfully recommended that the motion for default judgment be granted and a judgment be entered against Defendants as indicated herein.

### Factual Background and Procedural History

Payamps and Collado were both employed as clerks at a bodega called M&M. (Second Am. Compl. dated Sept. 20, 2018, Dkt. No. 36 ¶¶ 8, 26, 73). Their job duties involved opening and closing the store, receiving deliveries, checking out customers, operating the cash register, and stocking inventory. (*Id.* ¶¶ 28, 74). M&M was owned by two individuals, Defendants John Doe 1 and John Doe 2, known to Plaintiffs only as "Mohamed" and "Mo." (*Id.* ¶¶ 12, 13). Defendants sell various products at the bodega, such as packaged food and bottled drinks, basic pantry and household supplies, produce, and other small items. (*Id.* ¶¶ 11, 25).

In November 2015, Mo wanted to sell the entire business, but Mohamed refused to approve the sale. As a result, Mo sold his portion of M&M to Mohamed. (*Id.* ¶¶ 16,

19).  On December 15, 2016, either Mohamed or Mo dissolved M&M and started a new entity, Defendant A&MM.  (*Id.* ¶¶ 20–21; *see also* Decl. of Walker G. Harman, Jr. dated June 28, 2019 ("Harman Decl."), Dkt No. 47 ¶¶ 3–4; M&M Business Entity Information dated Oct. 17, 2017, attached as Ex. A to Harman Decl., Dkt. No. 47 at 1; A&MM Business Entity Information dated Oct. 17, 2017, attached as Ex. B to Harman Decl., Dkt. No. 47 at 1).  A&MM operates out of the same location as M&M, performs the same services and sells the same goods as M&M, and has, for all intents and purposes, continued M&M's business.  (Second Am. Compl. ¶¶ 21, 22).

Payamps alleges that he worked at M&M from November 2014 until December 2015.  (Second Am. Compl. ¶ 26; Decl. of Ricardo Payamps dated Apr. 1, 2018 ("Payamps Decl."), attached as Ex. A to Letter Response, Dkt. No. 32 ¶ 4).  For two weeks after he began working at M&M, from November 1, 2014 to November 14, 2014, Payamps worked 12 hours per day (7:00 a.m. to 7:00 p.m.), seven days per week, or 84 hours per week.  (Second Am. Compl. ¶ 36; Payamps Decl. ¶ 8).  From November 15, 2014 to May 31, 2015, Payamps worked 15 hours per day (7:00 a.m. to 10:00 p.m.), seven days per week, or 105 hours per week.  (Second Am. Compl. ¶ 38; Payamps Decl. ¶ 9).  From June 1, 2015 to December 15, 2015, Payamps worked 12 hours per day (7:00 a.m. to 7:00 p.m.), seven days per week, or 84 hours per week.  (Second Am. Compl. ¶ 40; Payamps Decl. ¶ 10).  Throughout his employment, Payamps was paid $7.00 per hour, which he received in cash once a week on Sundays.  (Second Am. Compl. ¶ 42; Payamps Decl. ¶ 7).

From the start of his employment until November 2015, Payamps was supervised by Mo, who assigned him work and managed M&M's daily operations.  (Second Am. Compl. ¶¶ 30–34; Payamps Decl. ¶ 5).  In November 2015, Mo sold his portion of M&M

to Mohamed. (Second Am. Compl. ¶ 66; Payamps Decl. ¶ 18). Mohamed assumed control and began directly managing Payamps's work, schedule, and pay. (Second Am. Compl. ¶¶ 68; Payamps Decl. ¶ 19). Mohamed continued to pay Payamps $7.00 per hour. (Second Am. Compl. ¶ 69; Payamps Decl. ¶ 20). On December 15, 2015, after M&M was dissolved and A&MM was formed, Mohamed reduced Payamps's schedule to only four hours per day, seven days per week (28 hours per week), telling him that Mohamed's family members were going to be running the store. (Second Am. Compl. ¶ 69; Payamps Decl. ¶ 21).

Payamps complained that he could not survive on $196 per week; Mohamed responded that if Payamps "did not want to work," he could leave. (Second Am. Compl. ¶¶ 70–71; Payamps Decl. ¶ 22). Payamps then resigned. (Second Am. Compl. ¶ 72; Payamps Decl. ¶ 23). It is unclear from the Second Amended Complaint if Payamps ever worked directly at A&MM (*i.e.*, after December 15, 2015, when M&M was dissolved). However, the motion for default judgment only seeks damages for Payamps before December 15, 2015. (Pls.' Mem. of Law in Supp. of Mot. for Default J. dated June 28, 2019 ("Pls.' Mem."), Dkt. No 48 at 12; *see also* Damages Analysis, attached as Ex. E to Harman Decl., Dkt. No. 47 at 3).

Collado worked at M&M from June 2015 until December 2015. (Second Am. Compl. ¶ 73; Decl. of Joel Collado dated April 1, 2018 ("Collado Decl."), attached as Ex. C to Letter Response, Dkt. No. 32 ¶ 4). From June 1, 2015 to July 31, 2015, Collado worked 15 hours per day, seven days per week, or 105 hours per week. (Collado Decl. ¶ 8; *see also* Damages Analysis). From August 1, 2015, to December 15, 2015, Collado worked 12 hours per day (6:00 a.m. to 6:00 p.m.), seven days per week, or 84 hours per week. (Collado Decl. ¶ 9; *see also* Damages Analysis). Collado was also paid $7.00 per

hour, which he received in cash once a week on Sundays.  (Second Am. Compl. ¶ 80; Collado Decl. ¶ 6).

On December 15, 2015, Collado resigned from his position.  (Second Am. Compl. ¶ 94; Collado Decl. ¶ 15).  Throughout his employment, Collado was supervised by Mo, who assigned work to Collado and directed M&M's daily operations.  (Second Am. Compl. ¶ 76; Collado Decl. ¶ 7).[2]

Plaintiffs commenced this action against M&M on September 1, 2016.  (Compl. dated Sept. 1, 2016, Dkt. No. 1).  M&M was served with the summons and the original Complaint on October 3, 2016.  (Aff. of Serv. dated Oct. 4, 2016, attached as Ex. A to Req. for Certificate of Default dated Oct. 25, 2016, Dkt. No. 8).  On November 4, 2016, the Clerk of Court issued a certificate of default against M&M.  (Clerk's Entry of Default dated Nov. 4, 2016, Dkt. No. 9).  Shortly thereafter, Plaintiffs moved for default judgment.  (Mot. for Default J. dated Dec. 7, 2016, Dkt. No. 10).  That motion was referred by District Judge DeArcy Hall to Magistrate Judge Vera M. Scanlon for a report and recommendation.  (Order Referring Mot. dated Dec. 13, 2016).

The Court held a hearing on June 6, 2017.  Payamps appeared in person to discuss his retaliation claims raised in the Complaint.  (Order dated Apr. 5, 2017; Min. Entry dated June 6, 2017).  Plaintiffs withdrew their pending motion for default judgment at the hearing.  (Order Withdrawing Mot. for Default J. dated June 6, 2017, Dkt. No. 16).  The Court directed them to file an amended motion for default judgment.

---

[2] It is unclear from Collado's declaration if "Mohamad" is Defendant Mo's full name or if this is a typographical error and the declaration intended to refer to Defendant Mohamed.  Given that the Plaintiffs have not corrected this uncertainty, the Court will proceed with the former possibility, which is consistent with other documents on the record.

(*Id.*).  Plaintiffs instead sought leave to amend the Complaint to add three additional defendants—A&MM, Mo, and Mohamed—and to withdraw Payamps's retaliation claims.  (Letter Mot. to Amend/Correct/Suppl. Compl. dated June 27, 2017, Dkt. No. 18; Letter Attaching Proposed First Am. Compl. dated July 14, 2017, Dkt. No. 19).  The Court granted Plaintiffs' motion.  (Order dated July 25, 2017).  Plaintiffs filed the Amended Complaint on July 28, 2017.  (Am. Compl. dated July 28, 2017, Dkt. No. 20). On October 5, 2017, the Clerk of Court issued certificates of default against M&M and A&MM.  (Clerk's Entry of Default dated Oct. 5, 2017, Dkt. No. 27).  Plaintiffs refiled their motion for default judgment on October 18, 2017.  (Mot. for Default J. dated Oct. 18, 2017, Dkt. No. 28).

On May 18, 2018, this Court recommended that default judgment be denied without prejudice on the grounds that Plaintiffs failed to state a claim, as a matter of law, under FLSA, and that the Court decline to exercise supplemental jurisdiction over the remaining state law claims.  *Payamps v. M & M Convenience Deli & Grocery Corp.* ("*Payamps I*"), No. 16-CV-4895, 2018 WL 3742696, at *1 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 156601, at *1 (Sept. 12, 2018).  This recommendation was adopted in its entirety by the Honorable LaShann DeArcy Hall on September 12, 2018.  *Id.*

Plaintiffs then filed a Second Amended Complaint on September 20, 2018. (Second Am. Compl. dated Sept. 20, 2019, Dkt. No. 36).  The Second Amended Complaint repeats the six causes of action found in the first Amended Complaint, alleging violations of the (i) minimum wage provisions of FLSA, 29 U.S.C. § 206(a); (ii) overtime provisions of FLSA for work in excess of 40 hours per week, 29 U.S.C. § 207(a)(1); (iii) New York minimum wage rate, N.Y. Lab. Law § 652(1); (iv) spread of

hours wage order for any day Plaintiffs had to work over 10 hours a day, N.Y. Lab. Law §§ 190 *et seq.*, § 650 *et seq.*, N.Y. Comp. Codes R. & Regs. tit. 12, § 142-1.6); (v) overtime provisions of NYLL, N.Y. Lab. Law § 190 *et seq.*; and (vi) notice and recordkeeping requirements of NYLL,[3] N.Y. Lab. Law § 195(1). (Second Am. Compl. ¶¶ 96–132). Plaintiffs seek a judgment in the amount of $119,353.14 plus prejudgment interest. (Pls.' Mem. at 4; Harman Decl. ¶ 10).

As before, service was made on M&M and A&MM, and they failed to answer or otherwise respond. (Dkt. Nos. 38–39). The Clerk of Court issued certificates of default on November 29, 2018, (Dkt. No. 40), and Plaintiffs moved for default judgment for the third time. (Dkt. Nos. 41–43). However, this Court found that the third motion for default judgment failed to comply with Local Civil Rule 55.2. (Order dated June 10, 2019, Dkt. No. 44). Plaintiffs then withdrew the third motion for default judgment and refiled it. (Dkt. Nos. 46–50). The Court now addresses Plaintiffs' fourth motion for default judgment and recommends entry of a default judgment as indicated herein.

<u>Discussion</u>

The Court assumes familiarity with the decision in *Payamps I* and the legal standards contained therein.

---

[3] Because Plaintiffs have not addressed M&M's failure to provide notice and to meet recordkeeping requirements under NYLL in its fourth motion for default judgment, (*see* Pls.' Mem.), or in its damages calculation, (*see* Damages Analysis), the Court concludes that Plaintiffs have abandoned their sixth cause of action. *See Joe Hand Promotions, Inc. v. Bernal*, No. 18-CV-85, 2019 WL 885930, at *3 (E.D.N.Y. Feb. 22, 2019) (finding that although Plaintiff prayed for injunctive relief in its complaint, it did not request such relief in its motion for default judgment, and therefore the claim was deemed abandoned); *see also Trs. of Plumbers Local Union No. 1 Welfare Fund v. Generation II Plumbing & Heating, Inc.*, No. 07-CV-5150, 2009 WL 3188303, at *3 n.1, *4 & n.3 (E.D.N.Y. Oct. 1, 2009) (holding that claims alleged in the complaint, but not asserted in motion for default judgment, were abandoned).

## I.  Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment.  *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).  The Clerk entered a default against M&M and A&MM on November 29, 2018.  (Clerk's Entry of Default dated Nov. 29, 2018, Dkt. No. 40).

A threshold question before reaching liability or damages is whether M&M and A&MM's conduct is sufficient to warrant default judgment being entered.  In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside an entry of a default.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001).  These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment."  *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

As to the first factor, M&M and A&MM's repeated failure to respond to the Complaint demonstrates that the default was willful.  *See, e.g.*, *Indymac Bank v. Nat'l*

*Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at * 1 (S.D.N.Y. Dec. 20, 2007) (finding that a defendant's failure to respond to the complaint and motion for default judgment indicates willful conduct). Both M&M and A&MM had sufficient notice of the ongoing present litigation. After filing the Second Amended Complaint, on October 22, 2018, Plaintiffs left a copy of a summons and the Second Amended Complaint with the Office of the Secretary of State of the State of New York in order to serve M&M and A&MM. (Aff. of Service, attached as Ex. A to Req. for Certificate of Default, Dkt. No. 38; Summons Returned Executed dated Oct 22, 2018, Dkt. No. 39; Harman Decl. ¶ 6). The fourth motion for default judgment was served on M&M and A&MM by serving the Office of the Secretary of State on July 3, 2019, (Aff. of Service dated July 10, 2019, Dkt. No. 50), and by mailing copies to Defendants via FedEx on June 28, 2019, (Certificate of Serv. dated June 28, 2019, Dkt. No. 49). Despite repeated notice and service, M&M and A&MM did not respond to the Second Amended Complaint or default judgment motion, did not appear, and have not in any way attempted to defend themselves.

As to the second factor, the Court cannot conclude there is any meritorious defense to Plaintiffs' allegations because none of the Defendants have appeared and no defense has been presented to the Court. *See, e.g.*, *IndyMac Bank*, 2007 WL 4468652, at *1 (finding no meritorious defense where defendants had not presented such a defense to the Court); *see also United States v. Hemberger*, No. 11-CV-2241, 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012) (same). Though this Court previously recommended against entering default judgment for the Plaintiffs because "Plaintiffs ha[d] failed to plead a claim for relief under FLSA," *Payamps I*, 2018 WL 3742696, at

*1, the identified issues were resolved prior to Plaintiffs' fourth motion for default judgment, as explained below.

As to the third factor, the non-defaulting parties, Plaintiffs Payamps and Collado, would be prejudiced if the motion for default were denied in this case "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 6074 (Jan. 26, 2009).

As a result, all three factors permit entry of a default judgment.  The Court now turns to the liability imposed and damages to be awarded in such a judgment.

II.    <u>Liability</u>

When a defendant defaults, a court, on consideration of a plaintiff's default judgment motion "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  In addition, a party's default is deemed as an admission of all of well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (3d ed. 2017) ("Once the default is established,

defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." (footnote omitted)).

    A.  <u>Minimum Wage and Overtime Claims against M&M and A&MM</u>

Plaintiffs have sued M&M and A&MM for violations of minimum and overtime wage requirements under both FLSA and NYLL.  Plaintiffs also allege a spread of hours violation under NYLL against both defendants.  The Court concludes that M&M and A&MM are liable under these provisions as discussed below.

    1.  <u>Fair Labor Standards Act Claims against M&M</u>

Plaintiffs allege claims against M&M for violations of FLSA's minimum wage and overtime requirements.  The Court finds that M&M is an employer subject to FLSA minimum wage and overtime requirements, failed to pay Plaintiffs at the required minimum and overtime wage rates, and is therefore liable for violating these provisions of FLSA.

    a.  <u>Statute of Limitations</u>

Under FLSA, a plaintiff may file a claim two years after the cause of action accrues or three years if the violation is willful.  29 U.S.C. § 255(a).  A violation is willful if the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute[.]"  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  The original Complaint, as well as the First Amended Complaint and the Second Amended Complaint, alleges that Defendants' violations of FLSA were willful.  (Compl. dated Sept. 1, 2016, Dkt. No. ¶¶ 73, 78; First Am. Compl. dated July 28, 2017, Dkt. No. 20; Second Am. Compl. ¶¶ 107, 115).  The Court accepts this on default as

true, and the Court concludes that a three-year statute of limitations applies to Plaintiffs'

FLSA claims. *See, e.g.*, *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 87 (E.D.N.Y.

2012) ("[Defendant] has therefore forfeited, by virtue of its default, any argument that

[the plaintiff] has failed to establish its willfulness for purposes of the limitations

period[.]").

The original Complaint was filed on September 1, 2016. (Compl., Dkt No. 1). As

a result, any FLSA claim for minimum wage and overtime pay occurring before

September 1, 2013, is time-barred.[4] Since Plaintiffs only seek damages for a period

ranging from November 2014 to December 2015 collectively, their claims are for a

period within the statute of limitations.

---

[4] An amended complaint "relates back to the date of the original pleading when
the amendment asserts a claim or defense that arose out of the conduct, transaction
conduct, transaction, or occurrence set out—or attempted to be set out—in the original
pleading." Fed. R. Civ. P. 15(c)(1)(B). "Under Rule 15, the central inquiry is whether
adequate notice of the matters raised in the amended pleading has been given to the
opposing party within the statute of limitations by the general fact situation alleged in
the original pleading. Where the amended complaint does not allege a new claim but
renders prior allegations more definite and precise, relation back occurs." *Slayton v.
Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (quotations and citations omitted).
Plaintiffs' Second Amended Complaint contains the same claims and factual
allegations as the First Amended Complaint and provides additional details about how
M&M and A&MM satisfy the interstate nexus required under FLSA. The claims in the
First Amended Complaint arose out of the same operative facts as did the claims in the
original Complaint. Notwithstanding the minor changes in the First Amended
Complaint from the original Complaint—adding three parties of which only one faces
default judgment, dropping a retaliation claim, and adding a NYLL failure to provide
notice and maintain recordkeeping claim, which the Court has now deemed
abandoned—the First Amended Complaint is identical to the original Complaint. As a
result, the current operative pleading, the Second Amended Complaint, relates back to
the original Complaint for calculating the statute of limitations and the period of
Plaintiffs' FLSA recovery. *See, e.g.*, *Chaohui Tang v. Wing Keung Enterprises, Inc.*, 210
F. Supp. 3d 376, 409–10 (E.D.N.Y. 2016) (finding relation back of plaintiffs' FLSA and
NYLL claims where amended complaint contained "essentially the same claims and
factual allegations that they set forth in their original complaint").

b. Threshold Requirements

To establish a claim under FLSA, the "plaintiff must prove the following: (1) the defendant is an employer subject to . . . FLSA; (2) the plaintiff is an 'employee' within the meaning of . . . FLSA; and (3) the employment relationship is not exempted from . . . FLSA." *Saucedo v. On the Spot Audio Corp.*, No. 16-CV-451, 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 780799 (Feb. 28, 2017). Plaintiffs have established all three threshold requirements.

i. Employers Subject to FLSA

Although the Court previously found that Plaintiffs failed to establish the first of the threshold FLSA requirements, *Payamps I*, 2018 WL 3742696, at *5, the Court now concludes that Plaintiffs' Second Amended Complaint sufficiently demonstrates that M&M is an employer subject to the minimum wage and overtime requirements of FLSA.

Employers who have employees "engaged in commerce or in the production of goods for commerce" ("individual coverage") or "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage") are subject to FLSA's minimum wage and overtime requirements. 29 U.S.C. §§ 206(a), 207(a)(1); *Shim v. Millennium Grp.*, No. 08-CV-4022, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009); *see generally Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 n.8 (1985). Enterprise coverage exists where an employer has (i) employees engaged in commerce or in the production of goods for commerce, and (ii) an annual gross volume of sales greater than $500,000. 29 U.S.C. § 203(s)(1)(A); *see also Saucedo*, 2016 WL 8376837, at *4.

Plaintiffs' Second Amended Complaint provides the minimum allegations necessary to demonstrate that M&M has employees "engaged in commerce." Unlike its

prior complaints which failed to allege—even in a conclusory fashion—that M&M was involved in interstate commerce or that it was subject to enterprise coverage, Plaintiffs' Second Amended Complaint alleges that upon information and belief, many of the items sold by M&M and A&MM such as beverages, packaged foods, etc., were "part of an interstate stream of commerce, having been grown, produced, manufactured, processed, or otherwise handled outside of New York State," and delivered to M&M and A&MM for sale. (Second Am. Compl. ¶¶ 11, 25). The Second Amended Complaint also alleges that the Plaintiffs and other employees handled these items. (Second Am. Compl. ¶¶ 28, 74). M&M, therefore, has employees engaged in commerce. *See, e.g.*, *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (finding that general allegations that defendant was "engage[d] in interstate commerce, produce[d] goods for interstate commerce, and/or handle[d], [sold], or otherwise work[ed] on goods or materials that have been moved in or produced for such commerce by any person" was sufficient to demonstrate that defendant was an enterprise engaged in commerce under FLSA), *report and recommendation adopted*, 2015 WL 5561180 (Sept. 21, 2015). The Court, therefore, concludes that there is a sufficient interstate nexus to meet the first requirement for enterprise coverage.

As to the second requirement, Plaintiffs allege that M&M had an annual gross sales volume of more than $500,000. (Second Am. Compl. ¶ 9). These allegations, accepted as true on default, are sufficient to subject M&M to the overtime and minimum wage requirements of FLSA.

### ii. Employees Covered by FLSA

Any "individual employed by an employer" is protected under FLSA's minimum and overtime provisions. 29 U.S.C. § 203(e)(1). To determine whether an individual is

"employed," "the ultimate question is whether the putative employee is economically dependent on the putative employer. In other words, the court must determine whether, as a matter of economic reality, the worker depends upon someone else's business for the opportunity to render service or is in business for himself." *Velu v. Velocity Express, Inc.*, 666 F. Supp. 2d 300, 306 (E.D.N.Y. 2009) (quotations and alterations omitted). The Second Amended Complaint alleges that Plaintiffs were employed and economically dependent on M&M, and there is no basis from the Second Amended Complaint to infer anything other than Plaintiffs were working for a business owned and operated by someone else. (Second Am. Compl. ¶¶ 26–72, 73–95).

### iii. Exempt Employment Relationship

There is no basis from the Complaint to infer that the employment relationship between Plaintiffs and M&M is exempt from FLSA. *See* 29 U.S.C. § 203 (defining FLSA terms and exemptions to coverage by the statute).

### c. FLSA Minimum Wage Claim

Plaintiffs claim M&M violated FLSA's minimum-wage provision, which provides that "[e]very employer shall pay to each of his employees . . . not less than . . . [the federal minimum wage]." 29 U.S.C. § 206(a)(1). Further, where a state's minimum wage is higher than the federal minimum wage, the employer must pay the state minimum wage to satisfy FLSA's minimum wage requirement. 29 C.F.R. § 778.5; *see also* 29 U.S.C. § 218(a); *Martinez v. Alimentos Saludables Corp.*, No. 16-CV-1997, 2017 WL 5033650, at *15 (E.D.N.Y. Sept. 22, 2017).

The FLSA minimum wage, as determined by the Fair Minimum Wage Act, was only $7.25 an hour during the entire period alleged in the Complaint. 29 U.S.C. § 206(a)(1)(C). However, M&M was required to pay the higher New York State

minimum wage for the relevant periods in this case: November 2014 to December 2015 for Payamps and June 2015 to December 2015 for Collado. The New York State minimum wage was $8.00 from December 31, 2013, to December 30, 2014. N.Y. Lab. Law § 652(1). From December 31, 2014, to December 30, 2015, the New York State minimum wage was $8.75 per hour. *Id.*

The Second Amended Complaint alleges that for the entire duration of their employment, both Payamps and Collado were paid $7.00 per hour, below the New York State minimum wage requirement. (Second Am. Compl. ¶¶ 42, 80). Based on these undisputed allegations in the complaint and default submissions, the Court finds that liability is properly imposed against M&M for violations of FLSA's minimum wage provisions.

   d. <u>FLSA Overtime Wage Claim</u>

Plaintiffs also claim that M&M violated FLSA's overtime wage requirement, which provides that an employee working "in excess of" 40 hours in a given workweek be compensated for that "excess work 'at a rate not less than one and one-half times the regular rate at which he is employed' . . . ."[5] *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). Plaintiffs "must allege overtime without compensation in a 'given' workweek," and not "an all-purpose pleading template alleging overtime in 'some or all workweeks.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (citing *Lundy*, 711 F.3d at 114). Nor

---

[5] In other words, under FLSA, unpaid overtime wages are calculated by first determining the employee's regular hourly rate, and then multiplying that number by 1.5. The regular hourly rate is determined by "dividing the salary by the number of hours which the salary is intended to compensate," 29 C.F.R. § 778.1, or the applicable minimum wage if the regular rate falls below the applicable minimum. 29 C.F.R. § 778.5.

is it acceptable for a plaintiff to just track "the statutory language of the FLSA . . . [,] alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation." *Id.* at 89. Rather, a plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked forty hours in a given week." *Nakahata v. N.Y.-Presbyterian Healthcare Sys. Inc.,* 723 F.3d 192, 201 (2d Cir. 2013). Only with such factual context will a plaintiff's overtime claim move from merely "conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and thereby survive a motion to dismiss. *Dejesus*, 726 F.3d at 90.

Both Payamps and Collado's overtime claims contain the necessary factual allegations to state a FLSA overtime violation. From November 1, 2014 to November 14, 2014, Payamps alleges that he worked 84 hours per week. (Second Am. Compl. ¶ 36). From November 15, 2014 to May 31, 2015, he alleges that he worked 105 hours per week, (*id.* ¶ 38), and finally, from June 1, 2015 to December 15, 2015, he alleges that he worked 84 hours per week, (*id.* ¶ 40). (*See also* Damages Analysis at 2). Likewise, from June 1, 2015 to July 31, 2015, Collado alleges that he worked 105 hours per week, (*id.* ¶ 78), and 84 hours per week from August 1, 2015 to December 15, 2015, (*id.* ¶ 79). (*See also* Damages Analysis at 1). During these periods, M&M never paid Payamps or Collado any overtime wages for hours worked in excess of 40 in a single work week. (*See* Second Am. Compl. ¶ 53, 89). Based on these undisputed allegations in the Second Amended Complaint, the Court finds that liability is properly imposed against M&M for violations of FLSA's overtime provisions.

### 2. New York Labor Law Claims against M&M

Plaintiffs also bring claims under NYLL against M&M for failure to pay state minimum wage, overtime premium rates, and spread of hours pay. This Court finds

that the NYLL applies to M&M, and thus the company is liable for failure to pay

Plaintiffs at the required minimum and overtime wage rates, and for failure to pay

spread of hours wages.

### a. Statute of Limitations

The statute of limitations under NYLL is six years. N.Y. Lab. Law § 663(3).

Plaintiffs first filed this lawsuit on September 1, 2016, and therefore any NYLL claim

before September 1, 2010, is time barred.[6] Plaintiffs only allege NYLL claims for periods

within the statute of limitations. (*See* Second Am. Compl. ¶¶ 26, 73).

### b. Threshold Requirements

"To recover overtime wages under the New York Minimum Wage Act, [Plaintiffs]

must prove that [they were employees] and that Defendants were employer[s] as

defined by the statute and accompanying regulations." *Ethelberth v. Choice Sec. Co.*, 91

F. Supp. 3d 339, 360 (E.D.N.Y. 2015) (quotations omitted) (citing N.Y. Lab. Law § 650

*et seq.;* N.Y. Comp.Codes R. & Regs. tit. 12, § 142–2.2). A covered "employee" under

NYLL is "any individual employed or permitted to work by an employer in any

occupation[.]" N.Y. Lab. Law § 651(5); *see generally Gonzales v. Gan Israel Pre-Sch.*,

No. 12-CV-06304, 2014 WL 1011070, at *9 (E.D.N.Y. Mar. 14, 2014). There are a

number of exemptions to that definition, none of which are applicable in this case. *See*

N.Y. Lab. Law § 651(5).

The Second Amended Complaint alleges that Payamps and Collado were

employees of M&M (Second Am. Compl. ¶¶ 26, 73), an employer under NYLL, (*id.* ¶¶ 8,

---

[6] *See supra* note 5.

22).  The Court accepts these factual allegations as true, and concludes that NYLL

applies to both Plaintiffs.  *E.g.*, *Gonzales*, 2014 WL 1011070, at *9–10.

        c.  <u>NYLL Overtime and Minimum Wage Claims</u>

"The NYLL mirrors the FLSA in most but not all respects.  New York requires

employers to pay at least a minimum hourly rate to employees and mandates a similar

premium for overtime compensation, but also requires that an employee be paid a

spread-of-hours premium equal to one hour of pay at the statutory minimum wage for

each day an employee works over ten hours." *Gunawan*, 897 F. Supp. 2d 76 at 84

(quotations omitted).

M&M failed to pay Plaintiffs the required minimum hourly rate under NYLL.

New York State regulations required a minimum wage of $8.00 per hour from

December 31, 2013 to December 30, 2014, and a minimum wage of $8.75 per hour from

December 31, 2014 to December 30, 2015.  N.Y. Labor Law § 652(1).  As discussed, both

Payamps and Collado were paid $7.00 per hour for the entirety of their employment,

below the minimum wage set by New York under NYLL.  (Second Am. Compl. ¶¶ 42,

80).  The company is therefore liable under NYLL for minimum wage violations.

M&M also failed to pay Plaintiffs the required overtime hourly rate under NYLL.

NYLL's overtime provision specifies that eight hours constitutes a "legal day's work,"

NYLL § 160, and that "[a]n employer shall pay an employee for overtime at a wage rate

of one and one-half times the employee's regular rate . . . ."  12 N.Y. Comp. Codes R. &

Regs. tit. 12, § 142-2.2.  Both Payamps and Collado assert that their work schedule

exceeded 40 hours per week.  (Second Am. Compl. ¶¶ 52, 88).  Payamps alleges that he

worked 84 hours per week from November 1, 2014 to November 14, 2014; 105 hours per

week from November 15, 2014 to May 31, 2015; and 84 hours per week from June 1,

2015 to December 15, 2015.  (Second Am. Compl. ¶¶ 36–40; *see also* Damages Analysis at 2).  Collado alleges that he worked 105 hours per week from June 1, 2015 to July 31, 2015, and 84 hours per week from August 1, 2015 to December 15, 2015.  (Second Am. Compl. ¶¶ 78–79; *see also* Damages Analysis at 2).  M&M never paid Plaintiffs the required overtime hourly wage.  (*See* Second Am. Compl. ¶¶ 53, 89).  Under these circumstances, M&M is liable for unpaid overtime under NYLL.

### d.  Spread of Hours Pay

Plaintiffs also allege a violation of NYLL's spread of hours provision, which requires that an "employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage for any day in which: the spread of hours exceeds 10 hours."  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  This spread of hours protection extends to covered employees, such as Plaintiffs.  *Id.* § 142-1.1(a); *see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005).  As noted in the Second Amended Complaint, Plaintiffs worked more than 10 hours per day on each day of their employment.  (Second Am. Compl. ¶¶ 36–40, 78–79).  M&M, however, never compensated Plaintiffs an additional hour's pay at the minimum wage rate as required.  (*Id.* ¶¶ 50, 84).  As a result, M&M is liable for violating NYLL's spread of hours provision.

### B.  A&MM's Liability

The Court must also determine if any liability should be imposed against A&MM.  It is not alleged in the Second Amended Complaint that either Payamps or Collado ever worked at A&MM, and the motion does not seek damages past December 15, 2015, when M&M was dissolved and A&MM took over the business.  (Pls.' Mem. at 2–3).  Thus, Plaintiffs are not seeking to hold A&MM directly liable for any wage and hour violations.

It appears that Plaintiffs have sued A&MM under a theory of successor liability—although the motion papers do not address the issue. "'[S]uccessor liability' is not a separate cause of action but merely a theory for imposing liability on a defendant based on the predecessor's conduct." *City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012). "Though a plaintiff must actually plead allegations of successor liability in the complaint, [p]leadings of successor liability are subject to the lenient . . . requirements of Rule 8(a)." *IMR Assocs., Inc. v. C.E. Cabinets, Ltd.*, No. 06-CV-5965, 2007 WL 1395547, at \*6 n.6 (E.D.N.Y. May 11, 2007) (citations and quotations omitted). In fact, "Plaintiffs do not need to explicitly use the words 'successor liability' for the pleading to adequately allege such a claim." *See Zhang v. Wen Mei, Inc.*, No. 14-CV-1647, 2017 WL 8813132, \*9 (E.D.N.Y. Dec. 28, 2017), *report and recommendation adopted*, 2018 WL 878988 (Feb. 14, 2019). The Second Amended Complaint alleges that either Mo or Mohammed dissolved M&M and started A&MM, which "operates out of the same location and performs the same services as M&M" and "has continued M&M's business." (Second Am. Compl. ¶¶ 21, 24). The Court finds that these factual allegations are sufficient to meet the bare minimum pleading requirements under Rule 8 for successor liability. *See Zhang*, 2017 WL 8813132, at \*8–9 (finding that although Plaintiff did not explicitly use term "successor liability," Plaintiff's factual allegations of common ownership, single enterprise, and continued business were sufficient to state such a claim).

Further, this Court has previously found that Plaintiffs have sufficiently stated a claim against A&MM under successor liability. In granting Plaintiffs' motion to amend to add A&MM as a defendant, Magistrate Judge Vera M. Scanlon found:

The Court also finds that Plaintiffs' proposed amendment to name A&MM as a Defendant would not be futile or in bad faith. Under both New York law and traditional common law, a corporation that purchases the assets of another corporation is generally not liable for the seller's liabilities. *See New York v. National Service Ind., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). "In general, successor liability will lie when: (1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction [conveying the assets of one company to the other] was fraudulent; (3) there was a de facto merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company." *See Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 376 (S.D.N.Y. Feb. 26, 1997). Plaintiffs have sufficiently stated a claim against A&MM as M&M's successor in interest under this standard by alleging that A&MM, through one or more of M&M's owners, was a mere continuation of M&M in that A&MM was incorporated on the same day on which M&M was dissolved, and that A&MM continued M&M's business by retaining the same location and selling the same goods as M&M. (Order granting Mot. to Am. dated July 25, 2017).

A&MM is, therefore, liable for claims against M&M under a successor liability theory. Having found M&M liable under both FLSA and NYLL, the Court recommends that the default judgment motion with respect to these claims be granted against A&MM as well.

III. <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup*, 973 F.2d at 158. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (alteration and quotations omitted). "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1992)). "Where, on a

damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527–28 (S.D.N.Y. 2012) (collecting cases).

That being said, because under FLSA "[t]he burden is on an employer properly to record hours," a "plaintiff need not compute FLSA damages with precision." *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x. 19, 20–21 (2d Cir. 2002). An employee may meet his burden of showing the amount and extent of his hours worked through his own recollection. *See Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011). As such, "[i]n a FLSA case, in the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." *Ting Yao Lin v. Hayashi Ya II, Inc.*, 08-CV-6071, 2009 WL 289653, at *3 (S.D.N.Y. Jan. 30, 2009) (collecting cases), *report and recommendation adopted*, 2009 WL 513371 (Feb. 27, 2009).

Plaintiffs' damages calculations contain small errors due to an inadvertent computation error by counsel. Where such errors exist, the Court is permitted to remedy them. *See Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-CV-8333, 2016 WL 11523365, at *13 (S.D.N.Y. Nov. 7, 2016) (correcting inadvertent computational errors even where correction would increase the amount of damages owed above that shown in the inquest submission), *report and recommendation adopted*, 2018 WL 4908106 (Oct. 10, 2018).

1. Unpaid Minimum Wages

Both FLSA and NYLL require that Plaintiffs be paid at or above the minimum wage rate. Further, if the state minimum wage rate is greater than the federal minimum

wage rate, FLSA requires that Plaintiffs be paid at or above the higher state minimum wage.  *See, e.g.*, *Rodriguez v. Queens Convenience Deli Corp.*, No. 09-CV-1089, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) ("During the relevant periods, N.Y.L.L. provided a higher minimum wage rate than the FLSA, and therefore plaintiff will be compensated according to the N.Y.L.L. minimum wage rate.").  When Plaintiffs bring both FLSA and NYLL minimum wage claims simultaneously, however, double recovery is prohibited.  *See Martinez v. Dannys Athens Diner Inc.*, No. 16-CV-7468, 2017 WL 6335908, at *3 (S.D.N.Y. Dec. 5, 2017) ("[I]t is well established that plaintiffs are not entitled to recover twice under both the FLSA and NYLL." (quotations omitted)). "Where . . . a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award damages under the statute providing the greatest amount of relief."  *Id.* (quotations omitted).

From December 13, 2013, to December 30, 2014, the federal minimum wage was $7.25, 29 U.S.C. § 206(a)(1)(C), whereas the New York State minimum wage under NYLL was $8.00, N.Y. Lab. Law § 652(1).  From December 31, 2014, to December 30, 2015, the New York state minimum wage was $8.75.  NYLL § 652(1).  This results in the following calculations:

| Payamps - Minimum Wage Claim | | | | | Total |
|---|---|---|---|---|---|
| Time Period: | 11/1/14–11/14/14 | 11/15/14–12/30/14 | 12/31/14–05/31/15 | 06/01/15–12/15/15 | |
| Number of Weeks | 2 | 7 | 22 | 28 | |
| Base Hours Worked Per Week | 40 | 40 | 40 | 40 | |
| Total Base Hours Worked | 80 | 280 | 880 | 1,120.00 | |
| Hourly Wage Paid | $7.00 | $7.00 | $7.00 | $7.00 | |
| NYS Minimum Wage | $8.00 | $8.00 | $8.75 | $8.75 | |
| Total Received for Base Hours Worked | $560.00 | $1,960.00 | $6,160.00 | $7,840.00 | $16,520.00 |
| Total Owed Under NY Minimum Wage | $640.00 | $2,240.00 | $7,700.00 | $9,800.00 | $20,380.00 |
| **Total Minimum Wage Owed** | **$80.00** | **$280.00** | **$1,540.00** | **$1,960.00** | **$3,860.00** |

| Collado - Minimum Wage Claim | | | Total |
|---|---|---|---|
| Time Period: | 06/01/15–07/31/15 | 08/01/15–12/15/15 | |
| Number of Weeks | 9 | 20 | |
| Base Hours Worked Per Week | 40 | 40 | |
| Total Base Hours Worked | 360 | 800 | |
| Hourly Wage Paid | $7.00 | $7.00 | |
| NYS Minimum Wage | $8.75 | $8.75 | |
| Total Received for Base Hours | $2,520.00 | $5,600.00 | $8,120.00 |
| Total Owed Under NY Minimum Wage | $3,150.00 | $7,000.00 | $10,150.00 |
| **Total Minimum Wage Owed** | **$630.00** | **$1,400.00** | **$2,030.00** |

The Court recommends that Payamps and Collado be awarded $3,860.00 and $2,030.00, respectively, in unpaid minimum wages, *i.e.* a total of $5,890.00.[7]

2. Unpaid Overtime Wages

Both federal and state law require that employers pay employees a 50% premium for their overtime hours—that is, the hours in excess of 40 that they have worked in each work week. 29 C.F.R. § 778.105; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4. Although Defendants are liable under both FLSA and NYLL for failing to pay Plaintiffs overtime wages, Plaintiffs cannot recover unpaid overtime compensation under both statutes for any period of statutory overlap. *See, e.g.*, *Pinzon v. Paul Lent Mech. Sys. Inc.*, 11-CV-3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (holding that a plaintiff may "not double dip" or obtain a "double recovery" of unpaid overtime wages under FLSA and the NYLL), *report and recommendation adopted*, 2012 WL 4174410 (Sept. 19, 2012).

By multiplying the number of hours worked in excess of 40 by 1.5 times the New York state minimum wage rate of the applicable time period, this Court finds that Defendants owe the following amounts in unpaid overtime wages under NYLL:

---

[7] The Court's calculations for unpaid minimum wages under NYLL matches Plaintiffs' calculations. (*See* Pls.' Mem. at 11).

| Payamps - Overtime Wage Claim | | | | | Total |
|---|---|---|---|---|---|
| Time Period: | 11/01/14–11/14/14 | 11/15/14–12/30/14 | 12/31/14–05/31/15 | 06/01/15–12/15/15 | |
| Number of Weeks | 2 | 7 | 22 | 28 | |
| Overtime Hours Worked Per Week | 44 | 65 | 65 | 44 | |
| Total Overtime Hours Worked | 88 | 455 | 1430 | 1,232.00 | |
| Hourly Wage Paid | $7.00 | $7.00 | $7.00 | $7.00 | |
| NYLL Overtime Rate | $12.00 | $12.00 | $13.125 | $13.125 | |
| Total Received for Overtime Hours Worked | $616.00 | $3,185.00 | $10,010.00 | $8,624.00 | $22,435.00 |
| Total Owed Under NY Overtime Rate | $1,056.00 | $5,460.00 | $18,768.75 | $16,170.00 | $41,454.75 |
| **Total Overtime Wage Owed** | **$440.00** | **$2,275.00** | **$8,758.75** | **$7,546.00** | **$19,019.75** |

| Collado - Overtime Wage Claim | | | Total |
|---|---|---|---|
| Time Period: | 06/01/15–07/31/15 | 08/01/15–12/15/15 | |
| Number of Weeks | 9 | 20 | |
| Overtime Hours Worked Per Week | 65 | 44 | |
| Total Overtime Hours Worked | 585 | 880 | |
| Hourly Wage Paid | $7.00 | $7.00 | |
| NYLL Overtime Rate | $13.125 | $13.125 | |
| Total Received for Overtime Hours Worked | $4,095.00 | $6,160.00 | $10,255.00 |
| Total Owed Under NY Overtime Rate | $7,678.13 | $11,550.00 | $19,228.13 |
| **Total Overtime Wage Owed** | **$3,583.13** | **$5,390.00** | **$8,973.13** |

The Court recommends that Plaintiff Payamps be awarded $19,019.75 for unpaid overtime wages and Plaintiff Collado be awarded $8,973.13, *i.e.* a total of 27,992.88.[8]

3. <u>Spread of Hours Pay</u>

"Spread of hours compensation is calculated by multiplying the minimum wage by the number of days an employee worked more than ten hours." *Cabrera v. 1560 Chirp Corp.*, No. 15-CV-8194, 2017 WL 1289349, at *6 (S.D.N.Y. Mar. 6, 2017) (quotations omitted), *report and recommendation adopted*, No. 15-CV-8194, 2017 WL 1314123 (Apr. 6, 2017); *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.4. Plaintiffs seek $3,550.75 (*i.e.*, $1,835.75 for Payamps and $1,715.00 for Collado) in spread of hours pay. (Pls.' Mem. at 12).

Payamps and Collado allege that they worked more than 10 hours per day for each day of their employment. This results in the following spread-of-hours calculations:

---

[8] The Court's calculations for unpaid overtime wages under NYLL matches Plaintiffs' calculations. (*See* Pls.' Mem. at 12).

| Payamps - NYLL Spread of Hours Claim | | | | | Total |
|---|---|---|---|---|---|
| Time Period: | 11/01–11/14/14 | 11/15/14–12/30/14 | 12/31/14–05/31/15 | 06/01/15–12/15/15 | |
| Number of Days Worked | 14 | 46 | 151 | 197 | |
| NYLL Minimum Wage | $8.00 | $8.00 | $8.75 | $8.75 | |
| **Spread of Hours Pay Owed** | **$112.00** | **$368.00** | **$1,321.25** | **$1,723.75** | **$3,525.00** |

| Collado - NYLL Spread of Hours Claim | | | Total |
|---|---|---|---|
| Time Period: | 06/01/15–07/31/15 | 08/01/15–12/15/15 | |
| Number of Days Worked | 60 | 136 | |
| NYLL Minimum Wage | $8.75 | $8.75 | |
| **Spread of Hours Pay Owed** | **$525.00** | **$1,190.00** | **$1,715.00** |

The Court recommends a $3,525.00 award to Plaintiff Payamps and $1,715.00 to Plaintiff Collado for unpaid spread of hours wages, *i.e.* a total of $5,240.00.[9]

4. Liquidated Damages

Plaintiffs seek liquidated damages under both FLSA and NYLL. Under FLSA, "[a]ny employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "The Portal–to–Portal Act, 29 U.S.C. § 251 *et seq.*, which amended FLSA, affords district courts discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate FLSA." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260).

NYLL also allows for liquidated damages. An employee can recover liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a). For

---

[9] Plaintiffs have a different amount ($1,835.75 owed) for Payamps due to a calculation error. (*See* Damages Analysis at 2).

all NYLL claims that accrued on or after April 9, 2011,[10] an employer is liable for liquidated damages equal to 100% of the total amount of wages found to be due. *Id.* § 663(1).

In light of the default by M&M and A&MM, there has been no showing that Defendants acted in good faith or that the Court should exercise its discretion to deny liquidated damages. *See Brock v. Wiliamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (noting that employer bears burden of establishing good faith defense under § 260 through "plain and substantial evidence"); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007) ("Simply put, double damages are the norm, single damages the exception[.]" (quotations omitted)); *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234, 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) ("In situations where defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." (quotations omitted)). Therefore, the Court recommends that liquidated damages be awarded under either FLSA or NYLL.

Where a Plaintiff brings liquidated damages claims under both FLSA and NYLL, double recovery under both statutes is generally unavailable. *Chowdury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016) ("New York's law does not call for an award of New York liquidated damages over and above a like award of FLSA liquidated damages."). In cases where plaintiffs could obtain liquidated damages under either FLSA and NYLL, the trend has been to award liquidated damages under

---

[10] Prior to this time period, liquidated damages were 25%. *See* Wage Theft Prevention Act, ch. 564, sec. 198, § 198(1-a), 2010 Sess. Law News of N.Y. (McKinney's) ("Effective April 9, 2011") (striking "equal to twenty-five percent of the total amount of wages found to be due" from the liquidated damages provision).

whichever statute provides the greater potential recovery. *Wu v. Nat. Tofu Rest. Corp.*, No. 16-CV-3613, 2018 WL 1009274, at *10 (E.D.N.Y. Feb. 20, 2018) (collecting cases). Here, that is the NYLL.

Based on the recommendation that Plaintiff Payamps be awarded $3,860.00 for unpaid minimum wages, $19,019.75 for unpaid overtime wages, and $3,525.00 for unpaid spread of overtime pay wages under NYLL,[11] the Court finds that Defendants owe Payamps a total of $26,404.75 in liquidated damages. Plaintiff Collado was awarded $2,030 for unpaid minimum wages, $8,973.13 for unpaid overtime wages, and $1,715.00 for unpaid spread of hours pay under NYLL, and so the Court finds that Defendants owe Collado a total of $12,718.13 in liquidated damages. In total, Plaintiffs are owed $39,122.88.[12]

5. Pre-Judgment Interest

Plaintiffs also seek pre-judgment interests for their NYLL unpaid wage damages. (Pls.' Mem. at 13). Although it is "well settled" that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, *Begum v. Ariba Disc., Inc.*, 12-CV-6620, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015), "NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015). Plaintiffs are entitled

---

[11] "The Wage Theft Prevention Act ('WTPA') increased the amount of liquidated damages recoverable under NYLL to 100 percent of the total unpaid wages, including spread of hours payments. N.Y. Lab. Law §§ 198(1-a), 663(1) (effective Apr. 9, 2011)." *Gonzalez v. Masters Health Food Serv. Inc.*, No. 14-CV-07603, 2017 WL 3835960, at *18 (S.D.N.Y. July 27, 2017).

[12] Because Plaintiffs' counsel made an inadvertent calculation error with Payamps's spread of hours wages, counsel reaches a different, incorrect amount for total liquidated damages owed ($37,433.63). (*See* Pls.' Mem. at 13; Damages Analysis at 4).

to an award of pre-judgment interest on their NYLL damages at a rate of 9% per year. N.Y. C.P.L.R. 5004. Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." N.Y. C.P.L.R. 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013). Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest. *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest[.]" (quotations omitted)). The most commonly used intermediate date is the "median date between the earliest ascertainable date the cause of action existed and the date the action was filed . . . ." *See, e.g.*, *Gunawan*, 897 F. Supp. 2d at 93 (collecting cases).

Here, Plaintiffs' causes of action accrued on their first day of work. The relevant period of employment for those wages is November 1, 2014, through December 15, 2015, for Payamps and June 1, 2015, through December 15, 2015, for Collado. This action was filed September 1, 2016. Using the reasonable intermediate date approach, the mid-point between November 1, 2014, and September 1, 2016, is October 2, 2015 for Payamps. The mid-point between June 1, 2015, and September 1, 2016, is January 15, 2016 for Collado. The total amount of NYLL damages for Payamps ($26,404.75) at 9% a year results in approximately $2,376.43 per year in interest, or $6.51 (rounded) per day, based on 365 days per calendar year. The total amount of NYLL damages for Collado ($12,718.13) at 9% a year results in $1,144.63 per year in interest, or $3.13 (rounded) per day, based on 365 days per calendar year. The Court recommends that pre-judgment interest be awarded in a daily amount of $6.51 for Payamps from October 2, 2015, until the date final judgment is entered, and a daily amount of $3.13 for Collado from January

15, 2016, until the date final judgment is entered.  *See Romero v. Rung Charoen Sub,*

*Inc.*, No. 16 CIV. 1239, 2017 WL 4480758, at *14 (E.D.N.Y. Sept. 30, 2017).

6.  <u>Post-Judgment Interest</u>

Plaintiffs also request post-judgment interest pursuant to 28 U.S.C. § 1961.

Under 28 U.S.C. § 1961, "the award of post-judgment interest is mandatory on awards in

civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet*

*Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (quotations omitted).  The

Court therefore recommends a post-judgment interest award on the total damages, at

the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of

Court enters judgment until the date of payment.  *See Fermin*, 93 F. Supp. 3d at 53

(listing cases and awarding post-judgment interest in FLSA cases).

7.  <u>Attorney's Fees and Costs</u>

Plaintiffs seek a total of $17,102.34 in attorney's fees and $635.58 in costs.  (Pls.'

Mem. at 16, 20).  When assessing whether legal fees are reasonable, the Court

determines the "presumptively reasonable fee" for an attorney's services by examining

what reasonable clients would be willing to pay.  *See Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183–84 & 184 n.2 (2d Cir. 2008).

To calculate the presumptively reasonable fee, a court must first determine a reasonable

hourly rate for the legal services performed.  *Id.* at 184.  The next step is to determine

the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire*

*State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *4–5 (E.D.N.Y. Feb. 26,

2007).  The number of hours spent on a lawsuit are considered unreasonable if they are

excessive, redundant, or unnecessary.  *See, e.g.*, *LaBarbera v. Frank J. Batchelder*

*Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

a. Hourly Rate

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of each counsel seeking the fee award. In his declaration, Plaintiffs' lead counsel Walker G. Harman, Jr., states that he, one associate (Edgar M. Rivera), and one paralegal (Lev Craig) worked on this case. (Harman Decl. ¶¶ 13–27). He also provides a general time sheet describing the work he and his two colleagues performed on this matter. (*See* Billing List dated Oct. 17, 2017, attached as Ex. F to Harman Decl., Dkt. No. 47). Harman indicates that he has been the principal attorney at his firm for 13 years, focusing primarily on employment law. (Harman Decl. ¶ 16). His hourly billing rate is $450. (Pls.' Mem. at 16). Mr. Rivera has been an associate at Mr. Harman's firm since 2014 and has experience in federal, state, and city wage-and-hour cases. (Harman Decl. ¶¶ 24, 26). His hourly billing rate is $300. (Pls.' Mem. at 16). Mr. Craig, a senior paralegal (Harman Decl. ¶ 27) assisted in this action, and his time was billed at $100 per hour. (Pls.' Mem. at 16–17).

"In recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals." *Weng v. Fancy Lee Sushi Bar & Grill, Inc.*, No. 15-CV-5737, 2017 WL 5564892, at *2 (E.D.N.Y. Nov. 3, 2017), *report and recommendation adopted*, 2017 WL 5564593 (Nov. 18, 2017). "Some judges 'have recognized slightly higher ranges in this district of $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." *Singh v. A & A Mkt. Plaza, Inc.*, No. 15-

CV-7396, 2019 WL 4861882, at *7 (E.D.N.Y. Sept. 30, 2019) (quoting *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2018 WL 2766139, at *7 (E.D.N.Y. June 8, 2018)) (collecting cases); *Xu v. JNP Bus Ser. Inc.*, No. 16-CV-245, 2018 WL 1525799, at *10 (E.D.N.Y. Mar. 28, 2018) ("Reasonable hourly rates for wage and hours cases in this District have generally been set at approximately $300.00 to $400.00 for partners and $100.00 to $300.00 for associates.") (collecting cases), *adopted in part and rejected in part on other grounds*, 2018 WL 1525662 (Mar. 28, 2018).

Though Mr. Harman's rates are within the possible range of acceptability, this particular case—a default case with two plaintiffs—is relatively straightforward, does not raise especially complex questions, and does not involve work that justifies awarding a rate at the higher end of the scale. *Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-CV-4761, 2019 WL 4889591, at *12 (E.D.N.Y. Sept. 10, 2019) (reducing the fee of a senior partner with over 30 years of experience in a FLSA default judgment case from $450 to $350) (collecting cases), *report and recommendation adopted*, 2019 WL 4887914 (Oct. 3, 2019); *Blue Moon Media Grp., Inc. v. Field*, No. 08-CV-1000, 2011 WL 4056068, at *13 (E.D.N.Y. Apr. 11, 2011) (reducing rates to $400 for partners, $175–$325 for associates based on experience, and $90 for paralegal), *report and recommendation adopted*, 2011 WL 4056088 (Sept. 12, 2011); *Callier v. Superior Bldg. Servs., Inc.*, No. 09-CV-4590, 2010 WL 5625906, at *6 (E.D.N.Y. Dec. 22, 2010) (reducing partner rate from $400 to $350 because of FLSA case's simple nature with two plaintiffs and no appearances by defendants), *report and recommendation adopted*, 2011 WL 222458 (Jan. 21, 2011); *Shukla v. Shama*, No. 07–CV–2972, 2010 WL 8435857, at *14 (E.D.N.Y. Dec. 15, 2010) (reducing attorney rates from $425 to $350 for partners and to $150–$250 for associates, and paralegal rate from $100 to $70

in FLSA action), *report and recommendation adopted*, 2012 WL 607667 (Feb. 24, 2012). As such, the Court recommends that Mr. Harman's hourly rate be reduced to $350.

As for the hourly rate of Mr. Rivera, the associate on the case, the Court finds a rate of $300 per hour is unreasonably high. Mr. Rivera graduated from Fordham University School of Law in 2014 and worked on this case as an associate from 2014 to 2017. (Harman Decl. ¶¶ 22, 24; Billing List at 1–3). Given that a billing rate of $300 per hour is at the higher end of what Courts have awarded for *senior* associates—which Mr. Rivera was not while working on this case—and the fact that this is a relatively straightforward case, the Court recommends that his hourly billing rate be reduced to $200. *See Cooper v. Dieugenia,* No. 14-CV-6136, 2018 WL 2103200, at *3 (E.D.N.Y. May 7, 2018) (reducing the $300 rate of an associate with four years of experience to $200 an hour because $300 was "considerably higher" than what was generally approved in this district for attorneys with comparable experience).

Similarly, the Court finds that Mr. Craig's rate should also be reduced. Mr. Craig is a paralegal who graduated from Harvard University in May 2016 and began working for the firm in June 2016, a few months before this case was first commenced in September 2016. His requested rate of $100 per hour is what some courts in this district award to junior associates, *see Zhong Fa Qin v. Sensation Neo Shanghai Cuisine, Inc.*, No. 15-CV-6399, 2018 WL 5456653, at *9 (E.D.N.Y. Aug. 9, 2018)*, report and recommendation adopted*, 2018 WL 4853041 (Oct. 4, 2018) (finding $100 per hour reasonable for a junior associate's work on a FLSA default judgment motion), or at the very least represents the higher end of what is given for work done by seasoned paralegals. *See Tarazona v. Rotana Cafe & Rest. Inc.*, No. 16-CV-76, 2017 WL 2788787,

at *2 (E.D.N.Y. June 27, 2017) (reducing a requested hourly rate of $125 to $75 an hour for a paralegal who had been working in the office since 2007); *see also Kliger v. Liberty Saverite Supermarket Inc.*, No. 17-CV-2520, 2018 WL 4782342, at *10 (E.D.N.Y. Sept. 17, 2018) ("Paralegals and preadmission associates typically receive an hourly rate of $75 in this district for these types of [FLSA default judgment] cases," (collecting cases)), *report and recommendation adopted*, 2018 WL 4783964 (Oct. 3, 2018); *Fundora v. 87-10 51st Ave. Owners Corp.*, No. 13-CV-0738, 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015) (reducing paralegal award from $100 to $75 per hour as consistent with rates awarded in other FLSA cases in the E.D.N.Y.). Thus, the Court finds Mr. Craig's rate high in light of his experience and the straightforward nature of this case, and recommends that it be reduced to $75 per hour.

    b.  <u>Hours Expended</u>

"[C]ourts are . . . expected to take into account their own familiarity and experience both 'generally' and with the particular case at hand, rather than attaining 'exactitude' with respect to each individual billing entry." *See Concrete Flotation Sys., Inc. v. Tadco Const. Corp.*, No. 07-CV-319, 2010 WL 2539771, at *7 (E.D.N.Y. Mar. 15, 2010) (citing *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)), *report and recommendation adopted*, 2010 WL 2539661 (June 17, 2010). "The court must assess whether the hours expended by plaintiff's counsel were reasonable, and exclude any hours that were excessive, redundant, or otherwise unnecessary to the litigation." *See Nuriddinov v. Masada III, Inc.*, No. 15-CV-5875, 2017 WL 9253401, at *12 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, 2018 WL 1251335 (Mar. 12, 2018). Courts have "the authority to make across-the-board percentage cuts in hours as

a practical means of trimming fat from a fee application." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (quotations omitted).

According to the billing records submitted, counsel spent 71.73 hours (*i.e.*, 7.8 hours by Harman, 36 hours by Rivera, and 27.93 by Craig) litigating this case. (*See* Billing List at 1–3). The Court finds these hours excessive and unnecessary for a number of reasons and recommends an across-the-board percentage cut.

First, a reduction is warranted because the hours requested include time spent correcting the attorney's own mistakes. *See Nuriddinov*, 2017 WL 9253401, at *12 (reducing fees because some portion of the work would have been unnecessary had counsel properly pled in the original complaint). For example, counsel includes hours spent filing an amended complaint and drafting a second motion for default judgment— actions which were only necessary because the attorneys had failed to properly serve Defendants with the original Complaint and failed to timely discover that M&M had been dissolved. (Letter Mot. to Amend/Correct/Suppl. Compl. dated June 19, 2017, Dkt. No. 18). What is more, the billing list includes vague entries such as "emails w/ ER" and "reviewing files." (Billing List at 1–2). Relevant details such as the subject matter of these conversations or which files were reviewed are largely absent from the billing entries. *See Chopen v. Olive Vine, Inc.*, 2015 WL 1514390, at *15 (E.D.N.Y. Mar. 13, 2015) ("The Second Circuit has upheld a district court's reduction in hours in light of 'concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews." (quoting *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64–65 (2d Cir. 2014))), *report and recommendation adopted in part and modified in part on other grounds*, 2015 WL 1542082 (Mar. 31, 2015); *see also Brown v. Green 317 Madison, LLC*, No. 11-CV-466, 2014 WL 1237448, at *11 (E.D.N.Y. Feb. 4, 2014) ("[C]ourts

routinely apply across-the-board reductions for vague entries.") (collecting cases), *report and recommendation adopted*, 2014 WL 1237127 (Mar. 25, 2014). And although Plaintiffs identify cases where such an hours award has been approved, *see, e.g.*, *Janus v. Regalis Constr., Inc.*, No. 11-CV-5788, 2012 WL 3878113, at *13 (E.D.N.Y. July 23, 2012) (approving 70.2 hours in an FLSA default case), the Court disagrees with counsel's characterization that "[c]ourts have *generally* found 70 hours to be a reasonable amount of time spent on an FLSA default action." (Pls.' Mem. at 17) (emphasis added). Rather, 71.73 hours far exceeds the number of hours regularly approved in FLSA and NYLL default judgment cases. *See, e.g.*, *Leon v. Chen*, No. 16-CV-480, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (finding that 13.51 hours was reasonable in a FLSA/NYLL default judgment motion); *Zhang v. Red Mountain Noodle House, Inc.*, No. 15-CV-628, 2016 WL 4124304, at *7 (E.D.N.Y. July 4, 2016) (approving total of 22.1 hours in default judgment FLSA case), *report and recommendation adopted*, 2016 WL 4099090 (Aug. 2, 2016).

In light of the unnecessary hours spent, vague billing entries, and excessive amount of hours requested for a FLSA default judgment motion, the Court recommends that the total amount of hours be reduced by 20% across the board. This results in the following fee calculations:

|  | **Mr. Harman** | **Mr. Rivera** | **Mr. Craig** | **Total** |
|---|---|---|---|---|
| Requested Billing Rate | $450.00 | $300.00 | $100.00 |  |
| Reduced Billing Rate | $350.00 | $200.00 | $75.00 |  |
| Requested Hours Billed | 7.8 | 36 | 27.93 |  |
| 20% Reduction in Hours | 6.24 | 28.8 | 22.344 |  |
| **Attorney's Fees** | **$2,184.00** | **$5,760.00** | **$1,675.80** | **$9,619.80** |

The Court recommends that a total of $9,619.80 be awarded for attorney's fees.

8. Costs

Under both FLSA and NYLL, a prevailing plaintiff is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying . . . ." *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). Only those costs that are tied to "'identifiable, out-of-pocket disbursements'" are recoverable. *Moon v. Kwon*, 99-CV-11810, 2002 WL 31512816, at *8 (S.D.N.Y. 2002) (quoting *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987)).

Plaintiffs request recoupment of the filing fee in the amount of $400. ("Costs" dated June 28, 2019, attached as Ex. G to Harman Decl., Dkt. No. 47 at 1). Plaintiffs also request amounts of $59 for service of process, $135 for interpretation services, and $41.58 for two counts of postal service used to serve M&M and AM&M. (*Id.*). Plaintiffs have submitted invoices as evidence for each of the requested costs. (*Id.* at 2–7). The filing fees are also supported by the docket entry which indicates that the filing fee was paid. (Dkt. No. 1); *see, e.g.*, *Shalto v. Bay of Bengal Kabob Corp.*, No. 12-CV-920, 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (holding that filing fees are recoverable without supporting documentation if verified by the docket). The Court deems these costs to be reasonable. The Court recommends that Plaintiffs be awarded $635.58 in costs.

## Conclusion

For the reasons stated above, it is respectfully recommended that default judgment be entered and Plaintiffs be awarded:

- $27,992.88 in unpaid overtime wages;

- $5,890.00 in unpaid minimum wages;

- $5,240.00 in spread-of-hours pay;

- $39,122.88 in NYLL liquidated damages;

- pre-judgment interest in an amount to be calculated by the Clerk of the Court of $6.51 per day from October 2, 2015 until the entry of final judgment for Plaintiff Payamps and $3.13 per day from January 15, 2016 until the entry of final judgment for Plaintiff Collado;

- post-judgment interest in an amount to be calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961(a); and

- $9,619.80 in attorney's fees and $635.58 in costs.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order. *See Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Plaintiffs shall serve a copy of this Report and Recommendation on the Defendants and file proof of such service in the record.

*/s/ Sanket J. Bulsara* Dec. 9, 2019
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York